2011 UT 81

**STATE of Utah, Plaintiff and Appellant,**

v.

**David B. MAXWELL, Defendant and Appellee.**

**No. 20090906.**

Supreme Court of Utah.

Dec. 20, 2011.

Rehearing Denied Feb. 7, 2012.

Mark L. Shurtleff, Att'y Gen., Jeffrey S. Gray, Asst. Att'y Gen., Salt Lake City, for appellant.

Grant W.P. Morrison, Salt Lake City, Clay A. Alger, Alpine, for appellee.

Justice LEE, opinion of the Court:

¶ 1 This case arises from an investigation by the Utah Attorney General's Task Force on Internet Crimes Against Children (ICAC). When ICAC agents discovered that child pornography had been downloaded through an IP address belonging to David Maxwell, they went to his home to talk to him about the evidence they had uncovered and about his use of a computer for viewing pornography. The agents eventually asked Maxwell if he would consent to a seizure and search of his computer. Maxwell refused. He also openly adverted to the possibility of destroying his computer. ICAC agents then seized the computer and later secured a warrant to search it. The ensuing search uncovered numerous video and still images of child pornography, and Maxwell was charged with ten counts of sexual exploitation of a minor.

¶ 2 The district court granted Maxwell's motion to suppress the files found on his computer, concluding that there was no exigent circumstance sustaining a warrantless seizure of Maxwell's computer, that any such exigency was improperly created by ICAC agents, and that seizure of the computer was unreasonable in any event because the agents could have ensured the integrity of the computer by less intrusive means. The State appealed. We accepted certification of the case from the court of appeals in light of the important questions it presents regarding the exigent circumstances standard for warrantless seizures.

¶ 3 We reverse. First, an exigent circumstance arose out of Maxwell's open acknowledgement that he was thinking of destroying his computer. Second, the exigency was not improperly created by the police, as there was no threat to engage in conduct violating the Fourth Amendment. Finally, the decision to seize Maxwell's computer was a reasonable method of preventing the destruction of evidence.

I

¶ 4 The ICAC Task Force actively monitors the internet for evidence of the use of child pornography. It implements methods used throughout the country to identify the Internet Protocol (IP) address of internet users who download child pornography using peer-to-peer (P2P) file-sharing software. Each file shared by a P2P user can be identified by a unique mathematical formula known as the Secure Hash Algorithm, or "SHA–1." When law enforcement agents discover a child pornography file, they calculate the file's SHA–1 value and list it in a national database of known child pornography. ICAC agents are then able to use file-sharing programs to discover the IP addresses of internet users who download known child pornography. This allows ICAC agents to investigate individuals without detection.

¶ 5 In January 2008, ICAC agents discovered that known child pornography was being downloaded to a particular IP address, and subsequently served a subpoena on Qwest Communications in an effort to identify the assignee of the IP address. In response to the subpoena, Qwest disclosed that the IP address was registered to defendant David Maxwell at his apartment in Holladay Utah.

¶ 6 On the evening of March 19, 2008, ICAC agents went to Maxwell's residence and knocked on his door. When Maxwell answered, the agents identified themselves, confirmed Maxwell's identity, and asked if they could come inside and speak with him. Maxwell consented and let them in. Once inside, the agents confirmed that Maxwell lived alone, received internet service through a modem (not a wireless router), and used P2P file-sharing software. The agents then informed Maxwell that they had learned that "inappropriate things" had been downloaded to his IP address. They then questioned Maxwell about his pornography viewing habits.

¶ 7 After Maxwell acknowledged that he occasionally viewed pornography on the internet, an agent specifically asked if he had ever used the internet to view child pornography. Maxwell explained that six to ten pornographic images of young teenage females had "come up" on his computer, but that he had deleted them. He also denied ever actively seeking child pornography. One of the agents then explained that any child pornography downloaded onto the com-

puter would probably still be on its hard drive, even if Maxwell had attempted to delete it.

¶ 8 After speaking with Maxwell for approximately twelve minutes, one of the agents stated, "We're going to need to take your computer. OK? You can consent to a search. Would you be willing to consent to a search so we can check that to make sure that there isn't anything on there?" Maxwell responded with concern that he was "in trouble," stating he did not know what he should do and that he did not want child pornography on his computer. He then said, "The way I'm feeling right now is maybe I ought to just destroy my computer, if you're saying it's on there, it's going to be on there." The agent replied that they were going to take the computer based on the evidence they collected and on Maxwell's statements. Before the agent reached the room where the computer was located, Maxwell asked if they had a search warrant. The agent acknowledged that he did not, but explained that he was going to seize the computer "based on probable cause." The agent further explained that absent Maxwell's consent, they would not search or otherwise check the contents of the computer until they obtained a warrant. The agent then seized the computer and gave Maxwell a property receipt.

¶ 9 The following day, an agent prepared an affidavit in support of a search warrant and submitted it to an assistant attorney general for review. One week later, the affidavit was submitted to a magistrate, who issued a warrant to search the contents of the computer. A subsequent search of the computer uncovered seven video files and twenty-seven still images of child pornography.

¶ 10 Maxwell was charged with ten counts of sexual exploitation of a minor, all second-degree felonies, and subsequently filed a motion to suppress the evidence seized from his computer. Following the suppression hearing, the district court granted his motion, concluding that (1) there was no exigent circumstance because the State had not presented evidence proving that Maxwell could have permanently destroyed his computer; (2) the agents themselves created any exi-

gency "at the outset when [they] informed Maxwell that they were aware that inappropriate material had been downloaded to his IP address and that they were with the Internet Crimes Against Children Task Force"; and (3) seizure of the computer was unreasonable because the agents could have ensured the integrity of the computer by less intrusive means.

¶ 11 After the State filed its appeal from the district court's order granting Maxwell's motion to suppress, the United States Supreme Court issued its opinion in *Kentucky v. King*, —— U.S. ——, 131 S.Ct. 1849, 179 L.Ed.2d 865 (2011), in which it clarified the standard for an impermissible police-created exigency.

## II

¶ 12 The State challenges all three grounds for the district court's suppression of the files seized from Maxwell's computer, while Maxwell defends and amplifies the bases for suppression. We agree with the State and reverse. In so doing, we clarify the law on the standard for establishing an exigent circumstance, on the situations where a police-created exigency runs afoul of the Fourth Amendment, and on the reasonableness of seizing property instead of monitoring its owner. We also reject an alternative ground for affirmance, based on state constitutional law, offered by Maxwell.

## A

¶ 13 The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Physical entry into the home is the "chief evil against which the wording of the Fourth Amendment is directed." *United States v. U.S. Dist. Court*, 407 U.S. 297, 313, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972). Thus, warrantless searches and seizures within an individual's home are "presumptively unreasonable," even when law enforcement has probable cause to search. *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).

¶ 14 However, this presumption "may be overcome in some circumstances because [t]he ultimate touchstone of the Fourth Amendment is reasonableness." *Kentucky v. King*, —— U.S. ——, 131 S.Ct. 1849, 1856, 179 L.Ed.2d 865 (2011) (alteration in original) (internal quotation marks omitted). "[T]he warrant requirement," therefore, "is subject to certain reasonable exceptions." *Id.* Among them is the exigent circumstances exception, which applies "when the exigencies of the situation make the needs of law enforcement so compelling that [a] warrantless search [or seizure] is objectively reasonable under the Fourth Amendment." *Id.* (first alteration in original) (internal quotation marks omitted). One such exigency arises when delay in acting may lead to the loss of evidence. *Illinois v. McArthur*, 531 U.S. 326, 331, 334, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001); *accord King*, 131 S.Ct. at 1856. So long as an officer has probable cause to conduct a search, a warrantless seizure is justified when the State demonstrates that the seizing officer "might reasonably have believed that ... the delay necessary to obtain a warrant, under the circumstances, threatened the destruction of evidence." *Schmerber v. California*, 384 U.S. 757, 770, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (internal quotation marks omitted).

¶ 15 Maxwell contends that exigent circumstances never arose during his ICAC interview because the agents were not "sufficiently certain" that Maxwell would destroy his computer if the agents left it with him. Under Maxwell's theory, which was adopted by the district court, Maxwell's statement, "maybe I ought to just destroy my computer," was insufficient to create a reasonable belief that Maxwell would successfully destroy the computer during the time it took to obtain a search warrant. The district court concluded that the State had failed to provide specific evidence indicating "how difficult it would have been for Maxwell to permanently destroy the evidence and how difficult it would be to recover images where a person has deleted them or attempted to destroy them."

¶ 16 This mischaracterizes the State's evidentiary burden and the nature of reasonable belief under the Fourth Amendment. To prove exigent circumstances, the State need demonstrate only that ICAC agents had a reasonable suspicion that evidence would be destroyed if the agents delayed long enough to obtain a warrant.[1] And the facts necessary to support reasonable suspicion are "commonsense, nontechnical," "practical considerations of everyday life on which reasonable and prudent men" must make decisions. *Ornelas v. United States*, 517 U.S. 690, 695, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) (internal quotation marks omitted). The State's burden, therefore, is to show that an officer confronted with Maxwell's statement about destroying his computer might reasonably have believed—based on "practical considerations of everyday life"—that Maxwell could and would destroy the evidence on his computer.

¶ 17 It is easy enough to imagine practical, everyday methods of damaging a computer in a way that would likely render the data on its hard drive irretrievable. Presumably a blowtorch or a power drill could do the trick. Although a computer expert could have provided the court with scientific information regarding hard-drive destruction techniques, it was not unreasonable for ICAC agents to believe that Maxwell could destroy his hard drive. Moreover, Maxwell not only had an obvious incentive to destroy his computer; he explicitly threatened to do so. Thus, the State has amply demonstrated that ICAC officers could have reasonably believed that a

---

1. *See Schmerber v. California*, 384 U.S. 757, 770, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) ("The officer in the present case, however, *might reasonably have believed* that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened the destruction of evidence." (emphasis added) (internal quotation marks omitted)); *see also Illinois v. McArthur*, 531 U.S. 326, 332, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001) ("[T]he police had *good reason to fear* that, unless restrained, [the suspect] would destroy the [evidence] before they could return with a warrant." (emphasis added)); *cf. United States v. Banks*, 540 U.S. 31, 37, 124 S.Ct. 521, 157 L.Ed.2d 343 (2003) (discussing exigency sufficient to dispense with knock-and-announce requirement; explaining that "it is enough that the officers had a *reasonable suspicion* of exigent circumstances" (emphasis added)).

warrantless seizure was needed to prevent Maxwell from destroying the evidence contained on his computer. We accordingly reverse the district court's contrary conclusion.

### B

¶ 18 Maxwell alternatively contends that the warrantless seizure remains unjustified because the ICAC agents impermissibly created the exigency that arose when Maxwell threatened to destroy his computer. Until recently, the standard for ferreting out impermissibly created police exigency was unsettled. *See Kentucky v. King,* — U.S. ——, 131 S.Ct. 1849, 1857, 179 L.Ed.2d 865 (2011). Prior to *King,* courts had variously held that officers improperly create a Fourth Amendment exigency if they act with "bad faith intent to avoid the warrant requirement," *United States v. Gould,* 364 F.3d 578, 590 (5th Cir.2004); if the exigency was "foreseeable," *United States v. Mowatt,* 513 F.3d 395, 402 (4th Cir.2008); if probable cause for a warrant existed before police action, *United States v. Chambers,* 395 F.3d 563, 566 (6th Cir.2005); if the "investigative tactics" leading up to the exigency were otherwise unreasonable, *United States v. Coles,* 437 F.3d 361, 370 (3d Cir.2006); or if police conduct is unlawful, *United States v. Collins,* 510 F.3d 697, 700 (7th Cir.2007); *United States v. MacDonald,* 916 F.2d 766, 772 (2d Cir.1990).

¶ 19 The United State Supreme Court definitively resolved this conflict last term, holding that "warrantless [action] to prevent the destruction of evidence is reasonable and thus allowed" so long as "the police did not create the exigency by engaging or threatening to engage in conduct that violates the Fourth Amendment." *King,* 131 S.Ct. at 1858. The Court in *King* refused to examine officer motive for evidence of bad faith, noting that it has " 'repeatedly rejected' a subjective approach, asking only whether 'the circumstances, viewed *objectively,* justify the action.' " *Id.* at 1859 (quoting *Brigham City v. Stuart,* 547 U.S. 398, 404, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006)). It refused to assess the foreseeability of exigency, "reject[ing] the notion that police may seize evidence without a warrant only when they come across the evidence by happen-

stance." *Id.* It also refused to examine the existence of probable cause prior to police action, reiterating that " 'officers are under no constitutional duty to call a halt to criminal investigation the moment they have the minimum evidence to establish probable cause.' " *Id.* at 1860–61 (quoting *Hoffa v. United States,* 385 U.S. 293, 310, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966)). Finally, the Court refused to second-guess police investigative tactics, explaining that such an approach "fails to provide clear guidance for law enforcement officers and authorizes courts to make judgments on matters that are the province of those who are responsible for federal and state law enforcement agencies." *Id.* at 1861.

¶ 20 The district court decided Maxwell's motion to suppress without the benefit of *King,* as *King* was handed down well after the suppression hearing in this case. In granting Maxwell's motion, the court applied a standard expressly repudiated in *King,* concluding that if there was an exigency, "it was created at the outset when the agents informed Maxwell that they were aware that inappropriate material had been downloaded to his IP address and that they were with the Internet Crimes against Children Task Force."

¶ 21 The police statements credited by the district court do not approach a threatened violation of Maxwell's Fourth Amendment rights. For that reason, they do not satisfy the test established in *King* and are not a viable basis for affirming the district court's ruling.

¶ 22 In recognition of that fact, Maxwell offers an alternative ground for affirmance. He contends that if there was an exigency, it resulted when the agents demanded the warrantless seizure of his computer, which, he argues, constituted a threatened violation of his Fourth Amendment rights. We disagree.

¶ 23 We see no basis for an inference that the agent was threatening to violate the Fourth Amendment. His exact words were: "We're going to need to take your computer. OK? You can consent to a search. Would you be willing to consent to a search so we can check that to make sure that there isn't

anything on there?" Maxwell asks us to infer that the asserted "need to take your computer" implied an intent to do so in contravention of the Fourth Amendment—regardless of any consent and whether or not the agents secured a warrant or discovered some other reasonable (exigent) basis for doing so. Such an inference, however, is not justified under the circumstances.

¶ 24 We will not lightly presume that law enforcement is inclined to flout the constitutional limits on its authority. In this case, moreover, the relevant context suggests that the ICAC agent's assertion was entirely consistent with the Fourth Amendment. Given the express request for Maxwell's consent, the statement that the agent would "need to take [the] computer" is reasonably understood to envision a seizure of the computer upon consent.

¶ 25 Maxwell speculates that the officer may have intended to take the computer regardless of consent, as evidenced by the fact that consent ultimately was not given and the computer was seized anyway. But the question is not the officer's subjective intent; it is whether the circumstances, *"viewed objectively,"* sustain the conclusion that the officer was threatening to violate the Fourth Amendment. *King*, 131 S.Ct. at 1859.[2] There is no basis for such a conclusion here. Indeed, while it's true that the ICAC agents eventually did seize Maxwell's computer without his consent, they did so only after an exigent circumstance had arisen.

¶ 26 This is another contextual basis for rejecting the notion that the agent was

threatening a Fourth Amendment violation. In context, his "need" to take the computer can reasonably be understood as dependent on either Maxwell's consent or the eventuality of an exigent circumstance. We interpret the agent's statement in that way and thus reverse the district court's conclusion that the exigent circumstance in this case was improperly created by law enforcement.

### C

¶ 27 Maxwell also contends that even if an exigency justified a warrantless seizure, the seizure was unreasonable because the ICAC officers should have used "less intrusive" means to achieve their law-enforcement objectives. Because the agents seized the computer rather than securing the premises, Maxwell argues that they made no attempt to "reconcile their law enforcement needs with the demands of [his] personal privacy." *Illinois v. McArthur*, 531 U.S. 326, 332, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001).[3]

¶ 28 The district court agreed, concluding that even assuming a valid exigency, the seizure was still unjustified because the agents could have responded with less intrusive action by stationing agents in Maxwells home to ensure the security of the evidence while others obtained a warrant. We disagree and hold that the officers' warrantless seizure was a reasonable response to Maxwells claim that he thought he should destroy his computer.

¶ 29 Maxwell is right to note that the Fourth Amendment requires the scope or extent of the seizure to be reasonably commensurate with the exigency.[4] Yet this does

---

**2.** *Cf. Whren v. United States*, 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) ("[S]ubjective intent alone ... does not make otherwise lawful conduct illegal or unconstitutional." (second alteration in original) (internal quotation marks omitted)); *id.* ("[T]he fact that [an] officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." (internal quotation marks omitted)).

**3.** Maxwell also argues for the first time on appeal that ICAC did not "diligently pursue[ ] a warrant to search the contents of the computer as soon as possible." According to Maxwell, the

agents waited eight days after the initial seizure to present a warrant to a magistrate, and this prolonged warrantless seizure was unreasonable. We decline to address this issue because it was raised for the first time on appeal and thus not preserved.

**4.** *See Illinois v. McArthur*, 531 U.S. 326, 328, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001) (holding that a warrantless seizure was reasonable in part because the officers "imposed a restraint that was both limited and tailored reasonably to secure law enforcement needs while protecting privacy interests"); *cf. Terry v. Ohio*, 392 U.S. 1, 19, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ("The scope of the search [or seizure] must be 'strictly tied to and justified by' the circumstances which ren-

not mean that law enforcement agents must "employ[ ] the least intrusive means" of remedying the exigent circumstances, *Bd. of Educ. of Indep. Sch. Dist. No. 92 v. Earls,* 536 U.S. 822, 837, 122 S.Ct. 2559, 153 L.Ed.2d 735 (2002). Rather, the law simply requires that agents' actions fall within the bounds of reasonableness, given the circumstances that created the exigency. *Id.*

¶ 30 The ICAC agents' actions easily satisfy this standard. By choosing to seize the computer rather than remain on site, the agents avoided subjecting Maxwell to an extended intrusion into his home. Had the agents elected to secure the premises, they would have had to remain in Maxwell's home or seize Maxwell himself and remove him from his home. Those intrusions of the home or the person would be significantly greater than mere seizure of Maxwell's computer. By impounding the computer rather than securing the premises, the agents reconciled their law enforcement needs while avoiding a significant intrusion of Maxwell's person and privacy. Their actions were accordingly reasonable, and we reverse the district court's contrary conclusion.

### D

¶ 31 As an alternative basis for upholding the decision below, Maxwell asks us to adopt as Utah constitutional law one of the more stringent standards addressed and rejected in *King.* Citing article I, section 14 of the Utah Constitution, Maxwell notes that we are not bound by *King* in interpreting our state constitution and urges that we reject the *King* standard in favor of alternatives that he deems preferable on policy grounds.

¶ 32 This argument misconstrues the role of this court on matters of state constitutional law. It is certainly true that we are not bound to conform our construction of the Utah Constitution to the interpretation given to parallel federal provisions by the U.S. Supreme Court. The prerogative to interpret the Utah Constitution is ours, and we do so without any responsibility to follow the lead of the nation's highest court on matters of federal constitutional law. But the final say on such matters is not a license for judicial policymaking. We are a court, not a constitutional convention, and our decisions must be based on an interpretation of the language and meaning of the provisions of the constitution. The Utah Constitution is a binding text for our interpretation, not a vessel to be filled with our views on wise public policy.[5]

¶ 33 We reject Maxwell's argument on the ground that it fails to provide any basis for our construction of article I, section 14 of the Utah Constitution. We remain open, as always, to briefing and argument on state constitutional issues, but we will not blithely assume that the Utah Constitution dictates a result different from that of its federal counterpart. And we will not recognize such a difference without a proper basis in the text, meaning, or history of the governing document.

### III

¶ 34 We reject all of the grounds embraced by the district court for suppressing the files seized from Maxwell's computer. We also reject the alternative basis for suppression asserted by Maxwell under the Utah Constitution. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

Justice LEE authored the opinion of the Court, in which Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice PARRISH, and Justice NEHRING joined.

---

dered its initiation permissible." (quoting *Warden, Md. Penitentiary v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) (Fortas, J., concurring))).

**5.** *Cf.* J. Story, Commentaries on the Constitution of the United States § 406 (1833) ("Nothing but the text itself was adopted by the people. And it would certainly be a most extravagant doctrine to give to any commentary then made, and *à fortiori,* to any commentary since made, under a very different posture of feeling and opinion, an authority which should operate as an absolute limit upon the text, or should supersede its natural and just interpretation.").