Filed 2/24/15  P. v. Thomas CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　　　v.<br><br>PETE G. THOMAS,<br><br>　　Defendant and Appellant. | G049862<br><br>(Super. Ct. No. 12CF3546)<br><br>O P I N I O N |

　　　　　Appeal from a judgment of the Superior Court of Orange County, David A. Hoffer, Judge.  Affirmed.

　　　　　Gerald Werksman for Defendant and Appellant.

　　　　　Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Meredith S. White and Kimberley A. Donohue, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant, a podiatrist, was convicted of possessing child pornography after the police found numerous images of naked young girls on his computer. He contends reversal is required because the police unlawfully seized and searched his computer, but we disagree and affirm the judgment.

FACTS

On the morning of October 25, 2012, computer technician John Edwards went to Coastline Podiatry in Santa Ana to install a scanner/copier at appellant's office. Appellant was not present at the time, but in order to complete the job, Edwards had to access the "default folder" on appellant's computer. When he did, approximately 20 "thumbnail" photographs of young girls appeared on the screen. The girls, who Edwards estimated were seven to eight years old, were naked from the waist down, and one of them had her legs spread out, revealing her vaginal area. Edwards did not say anything to anyone in appellant's office about the pictures. But later that day, he called the police and told Corporal Israel Garcia what he had seen.

Garcia promptly relayed the information to sex crimes Detective Mike Judson, the lead investigator on the case. Judson instructed Garcia to go to appellant's office that afternoon and see if he could get appellant's consent to search his computer. However, when Garcia went to appellant's office, appellant was not there. So, at Garcia's request, the office receptionist contacted appellant and put him on the phone with Garcia.

Garcia told appellant he was investigating a lead about child pornography and asked appellant if he could come to his office to talk. Appellant said he could not because he was in Los Angeles. Garcia then asked appellant if it would be okay if the police searched his computer. When appellant said no, Garcia told him officers would be staying at his office until a search warrant could be obtained. Appellant said he wanted to read the warrant before they took his computer, and Garcia told him they would leave a copy of the warrant in his office.

2

By that time it was nearly 5:00 p.m., and appellant's office was about to close for the evening. Garcia's shift was also coming to an end, so he radioed for assistance. Garcia requested that officers be sent out to appellant's office so that they could "sit on the place" until a warrant could be obtained. Garcia also contacted Detective Judson and informed him of the situation. Judson told Garcia to make sure appellant's computer remained guarded while he obtained a warrant.

However, Judson did not seek a warrant at that time. Instead, he discussed the situation with other detectives in his unit, and together they came to the conclusion exigent circumstances existed to seize appellant's computer without a warrant. Given that appellant knew the police were standing over his computer in anticipation of getting a warrant, the fear was appellant "could potentially be wiping the hard drive, cleaning the hard drive and eliminating [any incriminating] pictures from his computer from another location." So, Judson called Garcia and told him to seize appellant's computer, which he did. The computer was then booked into the evidence department of the Santa Ana Police Department with the expectation Judson would obtain a warrant to search it. No one from the department looked at the contents of the computer before then.

As it turned out, Judson was off work the next three days (Friday, Saturday and Sunday) and did not start preparing the warrant affidavit until Monday, October 29. The search warrant was issued the following day, five days after appellant's computer was seized. Forensic testing revealed over 1,000 images of child pornography on the computer, including about 100 photos depicting children who were engaged in sex acts with adults.

Appellant moved to suppress the images on two grounds: 1) The police lacked justification to seize his computer without a warrant; and 2) the five-day delay between the seizure and issuance of the search warrant was unreasonable. At the suppression hearing, the parties stipulated that had the police simply unplugged appellant's computer while it was at his office, it would have prevented anyone from

3

deleting evidence on it remotely. Judson testified he thought about that option at that time but surmised that unplugging or turning off the computer was tantamount to seizing it. He said the destruction of evidence is always a concern once a suspect knows the police are interested in a particular piece of evidence.

Speaking of his experience in other cases, Judson testified he had obtained telephonic search warrants in the past. However, he did not know how long it would have taken him to get such a warrant in this case. He did not discuss that option in talking with Garcia. It is undisputed that had Judson sought a telephonic search warrant, all he would have had to do was get in touch with the on-call magistrate and explain the basis for his request.[1]

The trial court felt this was a close case in terms of whether the police acted lawfully in seizing and searching appellant's computer. However, the court found exigent circumstances existed for Corporal Garcia to seize appellant's computer without a warrant because, had he not done so, appellant could have gone to his office and deleted the incriminating images from it or instructed someone else to do so. The court also determined the five-day delay from when the computer was seized until a search warrant was obtained was reasonable. Therefore, it denied appellant's motion to suppress the pornographic images that were discovered on his computer.

In light of that ruling, appellant pleaded guilty to one count of possessing child pornography. (Pen. Code, § 311.11, subd. (a).) The court sentenced him to probation on the condition that he spend one year in local custody, but it stayed execution of the sentence pending this appeal.

---

[1] In conjunction with his suppression motion, appellant also sought information from the prosecution about the policies and procedures that are applicable when the police seek a telephonic search warrant in Orange County. Although the trial judge denied that request, he explained on the record how the process works: "There is an on-call magistrate. When a police officer needs [a telephonic warrant], they make a phone call to the detention release officer. That officer then conveys that information to the on-call magistrate. The on-call magistrate then calls the police officer, says what do you want? The officer then conveys the information to the magistrate. That is the whole procedure that exists." Both parties agreed this was an accurate characterization of the application process.

4

DISCUSSION

Appellant contends that in obtaining the incriminating images from his computer, the police violated his rights under the Fourth Amendment. We disagree.

The Fourth Amendment to the United States Constitution provides, "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause . . . ." (U.S. Const., 4th Amend.; accord, Cal. Const., art. I, § 13.) "As the text makes clear, 'the ultimate touchstone of the Fourth Amendment is "reasonableness."' [Citation.]" (*Riley v. California* (2014) __ U.S. __ [134 S.Ct. 2473] (*Riley*).) Reasonableness "'is measured in objective terms by examining the totality of the circumstances' [citation] . . . ." (*People v. Robinson* (2010) 47 Cal.4th 1104, 1120.)

Relying on *Riley* and *Missouri v. McNeely* (2013) 569 U.S. __ [133 S.Ct. 1552] (*McNeely*), appellant contends it was unreasonable for the police to seize his computer without a warrant. But *McNeely* and *Riley* are search cases, not seizure cases. In *McNeely*, the United States Supreme Court held the natural dissipation of alcohol from the body does not per se constitute exigent circumstances justifying a warrantless search in the form of a blood draw from a person who is suspected of driving under the influence. (*McNeely, supra*, 133 S.Ct. at p. 1568.) And in *Riley*, the court held that, absent a warrant, the police may generally not search digital information on a cell phone that has been seized from a person who has been arrested. (*Riley, supra,* 134 S.Ct. at p. 2480.) Both of those cases involved searches that were highly intrusive in terms of the privacy interests they implicated. (*Id.* at p. 2491[recognizing cell phone searches typically reveal far more private information to the police than most house searches]; *McNeely, supra*, 133 S.Ct. at p. 1558 [describing an involuntary blood draw as "a compelled physical intrusion" of bodily integrity that invades "an individual's 'most personal and deep-rooted expectation of privacy.'"].)

5

In comparison, the threshold issue here is whether the police acted reasonably in *seizing* appellant's computer from his office. A seizure is "far less intrusive than a search." (*United States v. Payton* (9th Cir. 2009) 573 F.3d 859, 863.) Whereas a search implicates a person's right to keep the contents of his or her belongings private, a seizure only affects their right to possess the particular item in question. (*Segura v. United States* (1984) 468 U.S. 796, 806.) Consequently, the police generally have greater leeway in terms of conducting a warrantless seizure than they do in carrying out a warrantless search. As a matter of fact, the United States Supreme Court has "frequently approved warrantless seizures of property . . . for the time necessary to secure a warrant, where a warrantless search was either held to be or likely would have been impermissible." (*Ibid.*)

Practical considerations also favor a more relaxed standard for warrantless seizures than warrantless searches. "Where law enforcement authorities have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant, . . . the [Fourth] Amendment . . . permit[s] seizure of the property, pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it . . . . [Citations.]" (*United States v. Place* (1983) 462 U.S. 696, 701.) Exigent circumstances include "the need to prevent the destruction of evidence." (*Kentucky v. King* (2011) 563 U.S. __, __ [131 S.Ct. 1849, 1853-1854].) Therefore, if the police officers in the present case reasonably believed 1) appellant's computer contained evidence of a crime, and 2) the delay necessary to obtain a warrant to search the computer might result in the loss or destruction of evidence, then they had every right to seize the computer. (*Illinois v. McArthur* (2001) 531 U.S. 326, 333; *United States v. Place, supra,* 462 U.S. at p. 701; *Roaden v. Kentucky* (1973) 413 U.S. 496, 505; *Schmerber v. California* (1966) 384 U.S. 757, 770, declined to extend in *McNeely, supra,* 133 S.Ct. 1552.)

6

Appellant does not dispute the police had probable cause to believe his computer contained evidence of a crime. However, he contends the police could "have obviated any exigency in this case" by simply turning off or unplugging his computer until they obtained a search warrant. Doing this would have eliminated the possibility of remote data destruction. But it would not have prevented appellant (or someone acting on his behalf) from going to his office and either manually deleting information from the computer or damaging its hard drive in such a way as to foreclose the possibility of data retrieval. (See *State v. Maxwell* (Utah 2012) 275 P.3d 220, 224 [noting that to impair a hard drive so as to prevent the retrieval of incriminating evidence on a computer, "[p]resumably a blowtorch or a power drill could do the trick."].)

Other than taking appellant's computer, the only practical way the police could have preserved the evidence on it is by standing guard over the machine in appellant's office until a search warrant could be obtained. However, that would have constituted a seizure, as well. (See *Horton v. California* (1990) 496 U.S. 128, 133 [for Fourth Amendment purposes, a seizure occurs whenever the police deprive a person of dominion and control over his property].) In fact, had the police opted to do that, the resulting interference with appellant's possessory interest in the computer would have been no different than what occurred by virtue of the physical seizure. And it probably would have resulted in a very awkward and cumbersome situation at appellant's office until the warrant arrived. "[I]t is difficult to believe [appellant] would seriously [have found] it a lesser intrusion to have [had] . . . armed officers on his property" than to have had the officers seize his computer and go on their way. (*People v. Link* (1994) 26 Cal.App.4th 1272, 1276, fn. 15.)

In arguing lack of exigency, appellant makes much of the fact the police made no attempt to seek a telephonic search warrant before seizing his computer. But even if the police had pursued a telephonic warrant instead of a traditional warrant, it still would have entailed *some* delay. While this course of action would likely have reduced

7

the duration of the seizure, there still would have been a gap in time during which appellant's computer would have been vulnerable to manipulation or attack by outside forces had the police not taken measures to secure it. The truth of the matter is, once the police alerted appellant to the fact they were at his office and wanted to search his computer for evidence of child pornography, they really had no other option than to seize his computer to prevent the possible destruction of evidence. Therefore, the seizure was justified under the exigent circumstances doctrine. (See *People v. Coddington* (2000) 23 Cal.4th 529, 580, disapproved on other grounds in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13 [failure to seek telephonic warrant immaterial where prompt police action was needed to prevent the destruction of evidence]; *People v. Link, supra,* 26 Cal.App.4th 1272, 1277 [same]; *People v. Camilleri* (1990) 220 Cal.App.3d 1199, 1210-1211 [same].)[2]

Nevertheless, "[e]ven a permissible warrantless seizure, such as the initial seizure here, must comply with the Fourth Amendment's reasonableness requirement. Thus, the [United States] Supreme Court has held that after seizing an item, police must obtain a search warrant within a reasonable period of time." (*United States v. Burgard* (7th Cir. 2012) 675 F.3d 1029, 1032, citing *Segura v. United States, supra*, 468 U.S. at p. 812.) Unfortunately, there is "no bright line past which a delay becomes unreasonable. Instead, [we must] assess the reasonableness of [the delay] by weighing 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" (*United States v. Burgard, supra,* 675 F.3d at p. 1033, quoting *United States v. Place, supra*, 462 U.S.

---

[2] Appellant accuses the police of creating the alleged exigency that arose in this case. Although it is easy to second-guess the officers' initial decision to try to obtain appellant's consent to search his computer, rather than seeking a search warrant at the outset of the case, the Fourth Amendment does not require the police to apply for a search warrant at the earliest possible time after acquiring probable cause. (*Kentucky v. King, supra,* 131 S.Ct. at pp. 1860-1861].) Because "the police did not create the exigency by engaging or threatening to engage in conduct that violates the Fourth Amendment," they had every right to seize appellant's computer for the purpose of preserving the images it contained. (*Id*. at p. 1858.)

696.)  We must also consider whether the police diligently pursued their investigation and if good cause existed to justify the delay that occurred.  (*Ibid.*)

During the five-day period the police had appellant's computer, he obviously did not have access to it, and thus his right to control and use the computer was infringed.  However, the police did not search the computer, so appellant's privacy interest in its contents was not infringed.  Moreover, that five-day period included a Saturday and a Sunday, which are not traditional working days.  There is nothing in the record to suggest appellant would have used his computer on those days had the police not seized it from his office.

"On the other side of the equation, law enforcement's interests [in seizing appellant's computer] were . . . strong," in that the police had probable cause to believe it contained evidence of child pornography.  (*United States v. Burgard, supra,* 675 F.3d at p. 1034.)  Child pornography is not only a reprehensible offense in and of itself, it "is proximately linked to the sexual abuse of children [citation], 'a most serious crime and an act repugnant to the moral instincts of a decent people' [citation.]"  (*In re Grant* (2014) 58 Cal.4th 469, 477.)  It cannot be gainsaid that the police were pursuing an important governmental interest in this case.

Finally, with regard to the diligence factor, the record shows appellant's computer was seized at the end of the business day on Thursday, October 25, 2012 and that Detective Judson was off work the next three days.  When Judson returned to his office on Monday the 29th, he began preparing the search warrant materials, and the warrant was issued the following day.  Thus, the five-day delay between the seizure and the warrant's issuance was largely attributable to Judson's schedule; it was "not the result of complete abdication of his work or failure to 'see any urgency'" in the investigation.  (*United States v. Burgard, supra,* 675 F.3d at p. 1034.)  Under these circumstances, the delay cannot be said to have been unreasonable.  While it certainly was not optimal, we must remember "police imperfection is not enough to warrant reversal.  With the benefit

9

of hindsight, courts 'can almost always imagine some alternative means by which the objectives of the police might have been accomplished,' but that does not necessarily mean that the police conduct was unreasonable. [Citation.]" (*Ibid.*)

At bottom, we are convinced the police acted reasonably in both seizing and searching appellant's computer. Although five days transpired between those two events, the delay was not unreasonable under the circumstances presented. (*United States v. Burgard, supra,* 675 F.3d at p. 1034 [six-day delay between the seizure of the defendant's cell phone and the securing of a search warrant to look for evidence of child pornography on the device was not unduly lengthy even though the police "should have been able to submit the warrant application more quickly"]; *United States v. Martin* (2nd Cir. 1998) 157 F.3d 46, 54 [although not ideal, 11-day delay between warrantless seizure and subsequent warrant search was not unreasonable where the delay "included two weekends and the Christmas holiday"]; *State v. Maxwell, supra,* 275 P.3d 220 [Fourth Amendment did not require suppression of pornographic images of children that were found during a search of the defendant's computer eight days after the police seized it from his home].)[3]

As an alternative basis for upholding the trial court's ruling, the Attorney General argues that, even if the seizure at hand violated the Fourth Amendment, suppression is not required because the incriminating photos on appellant's computer would have been discovered anyway. (See generally *People v. Carpenter* (1999) 21 Cal.4th 1016, 1040 [notwithstanding a constitutional infringement, the exclusionary rule does not apply if the subject evidence would inevitably have been discovered by lawful

---

[3] Oddly, appellant takes the position that the length of delay to secure a search warrant in this case is a "non-issue, because if exigent circumstances existed for the seizure, no warrant [was] necessary" to search his computer. However, in so stating, appellant fails to recognize that, as this case shows, police seizures are sometimes utilized as a temporary measure to safeguard property until a search warrant can be obtained. By assessing the reasonableness of the delay involved in obtaining a search warrant, courts can ensure that seizures "reasonable at [their] inception" do not "become unreasonable as a result of [their] duration." (*Segura v. United States, supra*, 468 U.S. 796, 812.)

means].)  When the prosecution floated this inevitable-discovery theory at the suppression hearing below, the trial judge did not formally rule on it, one way or the other, but he did express some skepticism toward it.

However, there is no evidence the seizure of appellant's computer had any substantive impact on the warrant process.  Probable cause existed apart from the seizure, and the police were fully prepared to seek a search warrant in the event appellant did not consent to search.  The fact they seized appellant's computer before seeking a warrant is immaterial for analytical purposes because they did not search the contents of the computer before the warrant was issued, and the seizure itself played no part in the probable cause analysis.  Because the search warrant application was wholly independent from the seizure, the seizure did not taint the warrant or the subsequent discovery of the incriminating photos.  Therefore, assuming the initial seizure of appellant's computer was illegal, there was no need to suppress the fruits of the warrant search.  (*Murray v. United States* (1988) 487 U.S. 533, 542; *United States v. Gholston* (E.D. Mich. 2014) 993 F.Supp.2d 704, 716-717.)

## DISPOSITION

The judgment is affirmed.


BEDSWORTH, J.

WE CONCUR:


O'LEARY, P. J.


FYBEL, J.

11