2021 IL App (2d) 180991
No. 2-18-0991
Opinion filed April 27, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 17-CF-1070 |
| LAMAR M. MEAKENS, | ) ) | Honorable Liam C. Brennan, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE McLAREN delivered the judgment of the court, with opinion.
Justices Schostok and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Lamar M. Meakens, appeals from his convictions of unlawful possession of a weapon by a felon, a Class 3 felony (720 ILCS 5/24-1.1(a), (e) (West 2016)), and unlawful possession of less than 15 grams of a substance containing cocaine (720 ILCS 570/402(c) (West 2016)). He contends that the trial court erred in denying his motion to suppress evidence obtained from his cell phone under a warrant that the police procured 16 months after seizing the phone. Defendant argues that the 16-month delay was unreasonable; the State disagrees. We agree with defendant that his fourth amendment rights were violated. The duration of the delay—which was extraordinary under the case law—together with other factors rendered the continued seizure of the phone unreasonable. Therefore, we vacate his convictions and remand the cause.

¶ 2                                    I. BACKGROUND

¶ 3    Defendant was arrested on May 28, 2017, following a traffic stop. He was later charged with forgery (knowing possession of a counterfeit $100 bill) (720 ILCS 5/17-3(a)(3) (West 2016)), multiple weapons offenses including unlawful possession of a weapon by a felon, and possession of less than 15 grams of a substance containing cocaine.

¶ 4    On October 2, 2018, shortly before defendant's scheduled bench trial, the State obtained a warrant to search an iPhone brand smartphone—that is, a cell phone with Internet capability and the ability to run apps. The Naperville police had retained his iPhone since seizing it from him at his May 2017 arrest. Defendant, *pro se*, moved to suppress the evidence obtained from the iPhone.

¶ 5    The parties agree on appeal that the facts relating to the search had been adduced at earlier hearings on motions to suppress. Just after midnight on May 28, 2017, a Naperville police officer stopped defendant for speeding. Based on an odor in the car, the officer called for a canine search. The searching officers found eight $100 bills (several of which had identical serial numbers), a loaded .40-caliber handgun, and two unlabeled pill bottles, which in turn contained bags that held pills marked Xanax, a green leafy substance, and a white powder. While defendant was in the back of the squad car, he used the iPhone at issue to make a call.

¶ 6    Defendant was arrested and taken to the Naperville Police Department. Police later found a second cell phone (which is not at issue in this appeal), in a backpack in the trunk of defendant's car. Defendant was initially released without charges. His possessions, including his iPhone, were not returned to him (but the record is unclear whether he requested their return).[1] However, on May 30, 2017, police obtained a warrant for his arrest, and defendant was arrested the next day.

_____

[1] We note that a cell phone is not contraband; therefore, defendant's cell phone should have

¶ 7    At the hearing on defendant's motion to suppress the results of the iPhone search, one of the matters raised was the propriety of the State's delay in getting the warrant. Also discussed was the impact that the seizure of the phone had on defendant's possessory interest. Defendant, who continued to represent himself, asserted that his prior attorney had made several requests for returning his iPhone and other property. The State, however, argued that an iPhone is, by its nature, easily replaceable. Therefore, the possessory-interest impact of seizing a suspect's cell phone is necessarily less than, for instance, seizing a suspect's luggage. The State also argued that defendant's possessory interests were at a minimum while he was held in jail. The court ruled against defendant:

> "The next issue that's raised is this question of delay. And obviously the phone is initially seized on or about May 28th of [2017] and the search warrant is not obtained until on or about October 1st, some 16 months later. *** [T]here are federal courts that have held that a search pursuant to a search warrant and, though based on probable cause, may be unconstitutional if police act with unreasonable delay. ***

> To determine the reasonableness of the delay ***, the Court essentially looks to three things: the length of time for which the individual was deprived of his or her property; any diminished interest in the property that the individual may have had; and whether the seizure affected the individual's liberty interests, for example, where an officer seizes a traveler's luggage thereby disrupting the individual's travel plans, hence that question. Turning to those factors, the first, the length of time for which the individual was deprived of his or her property, 16 months, that particular factor does cut against the State. ***

_____

been returned to him upon his initial release. See 725 ILCS 5/108-2 (West 2016).

[W]hen the State decided to obtain a search warrant it was able to *** obtain a search warrant and conduct a forensic analysis in an impressively expedited fashion, a couple of days. So I can't imagine there's any explanation for waiting 16 months. But that's not the sole factor in determining the reasonableness of the delay.

The other two factors that the courts look to cut against the Defendant or in the State's favor. First, the deprivation of the cell phone had no effect on the Defendant's liberty interests. It's obviously something different than luggage in an airport or something along those lines. And, secondly, even accepting the Defendant's memory that either [his former attorneys] requested the return of his cell phone—which *** I can't find *** anywhere in the record; and my notes on my files don't reflect that. But accepting that as true for the moment, even with that, the Defendant had a diminished interest in his cell phone because, as the State argues, the Defendant has essentially been in custody since June 1st of 2017 and you can't *** use a cell phone in the county jail. So when I put those three factors together I don't find the delay unreasonable as, at least, some federal courts have analyzed the question."

In this analysis, the court cited *United States v. Howe*, 545 F. App'x 64, 66 (2d Cir. 2013), a federal summary order that found that a 13-month delay in obtaining a search warrant for a computer was reasonable when (1) the delay was the result of an officer's mistaken belief that a state search warrant had already been obtained and (2) probable cause existed to believe that the computer contained contraband.

¶ 8     At defendant's bench trial, a witness for the State testified that deleted messages recovered from defendant's cell phone were consistent with the terminology used by a drug dealer making arrangements for the sale of cocaine. In ruling that defendant had possession of the handgun, the

court specifically took note of the content of some of the texts the police recovered from the phone. The court found defendant guilty of all counts except the forgery count. The court found that the four weapons counts merged into one count—unlawful possession of a weapon by a felon—for which the court sentenced defendant to 50 months' imprisonment. The court sentenced defendant to a concurrent term of 36 months' imprisonment on the drug possession count.

¶ 9    Defendant did not file a posttrial motion. He did file a timely notice of appeal.

¶ 10                                    II. ANALYSIS

¶ 11    On appeal, the parties limit their arguments to the issue of whether the State's delay in obtaining a search warrant for the cell phone violated defendant's fourth amendment right to be free from unreasonable searches and seizures.

¶ 12    We specifically note that the parties' framing of the matter narrows the issue strictly to that of the constitutionality of the delay. In particular, the State does not assert that defendant forfeited his argument by failing to raise it in a posttrial motion. Defendant filed no posttrial motion and thus apparently forfeited his claim. See, *e.g.*, *People v. Staake*, 2017 IL 121755, ¶ 30 ("To preserve a claim of error for consideration by a reviewing court, a defendant must object to the error at trial and raise the error in a posttrial motion."). However, despite a defendant's failure to file a posttrial motion, we may nevertheless consider constitutional issues, the sufficiency of the evidence, and issues of plain error.[2] *People v. Enoch*, 122 Ill. 2d 176, 190 (1988). Here, defendant's argument is

_____

[2] We further note that *People v. Foster*, 171 Ill. 2d 469 (1996), makes clear that section 116-1(b) of the Code of Criminal Procedure of 1963 (725 ILCS 5/116-1(b) (West 2016)) "does not make filing a written motion for a new trial a prerequisite to consideration on appeal." *Foster*, 171 Ill. 2d at 472. Here, although the defendant was *pro se*, he was never told that he was required

essentially constitutional—he contends that the State's delay in obtaining a search warrant for the iPhone violated his fourth amendment right to be free from unreasonable searches and seizures. Moreover, the State may forfeit or waive an issue of forfeiture as to a defendant's arguments. *People v. Miller*, 2021 IL App (2d) 190093, ¶ 21; see also *People v. Bridgeforth*, 2017 IL App (1st) 143637, ¶ 46 ("The rules of waiver also apply to the State, and where, as here, the State fails to argue that defendant has forfeited the issue, it has waived the forfeiture."). In any event, if we were to ignore the State's waiver of the issue, we would step close to the line of allowing our analysis to become improper advocacy for the State. See, *e.g.*, *People v. Williams*, 2020 IL App (3d) 180024, ¶ 51 (a reviewing court must avoid becoming an advocate as to unbriefed issues). Consequently, we address the claim as properly preserved.

¶ 13    We review a ruling on a motion to suppress according to the following standards:

> "[T]he trial court's findings of historical fact are reviewed only for clear error, giving due weight to any inferences drawn from those facts by the fact finder, and reversal is warranted only when those findings are against the manifest weight of the evidence. [Citation.] However, a reviewing court remains free to undertake its own assessment of the facts in relation to the issues and may draw its own conclusions when deciding what relief should be granted. [Citation.] A trial court's ultimate legal ruling as to whether suppression is

---

to file a posttrial motion. Although the trial court discussed matters of appeal and the appointment of the appellate defender with defendant, it did not reference defendant's obligation to file a motion for a new trial setting out his contentions of error. *Enoch* presupposes that the defendant was aware of the requirements of section 116-1. There can be no forfeiture or waiver under the circumstances here.

warranted is subject to *de novo* review. [Citation.]" *People v. Hackett*, 2012 IL 111781, ¶ 18.

Here, since the facts are not in dispute, our review is strictly *de novo*. See *People v. Topor*, 2017 IL App (2d) 160119, ¶ 14.

¶ 14    The fourth amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. A seizure that was initially reasonable may become unlawful because of its duration; thus, "once law enforcement officers have seized an item, they must obtain a search warrant within a reasonable time." *People v. McGregory*, 2019 IL App (1st) 173101, ¶ 17. When officers fail to seek a search warrant for a seized item, at some point the delay becomes unreasonable and is actionable under the fourth amendment. *United States v. Burgard*, 675 F.3d 1029, 1032 (7th Cir. 2012).

¶ 15    When we decide whether a seizure has become unreasonable, we " ' "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." ' " *McGregory*, 2019 IL App (1st) 173101, ¶ 18 (quoting *United States v. Stabile*, 633 F.3d 219, 235 (3d Cir. 2011), quoting *United States v. Place*, 462 U.S. 696, 703 (1983)).

> "On the individual's side, the primary concern is with the invasion of the individual's possessory interest in the property, as a seizure does not generally affect an individual's privacy or liberty interests. [Citation.] The longer that the seizure lasts, the greater the invasion on the individual's possessory interest. [Citation.] Delays also affect the integrity of the criminal justice system in that they prevent the judiciary from promptly evaluating and correcting improper seizures. [Citation.] In addition, an individual's assertion of his or

her possessory interest in the subject property, *i.e.*, by checking on the status of the procedure or requesting its return, is helpful—although not essential—evidence that the seizure of the property affected the individual's possessory interests. [Citation.]" (Internal quotation marks omitted.) *McGregory*, 2019 IL App (1st) 173101, ¶ 18.

¶ 16    Balanced against the individual's possessory interest is the State's interest in upholding the seizure. *McGregory*, 2019 IL App (1st) 173101, ¶ 19. That interest is greater in seizures based on probable cause than in those resting only on reasonable suspicion; an individual has no possessory interest in property seized by consent. *McGregory*, 2019 IL App (1st) 173101, ¶ 19. "Thus, greater delays are tolerated in cases involving probable cause seizures than those involving reasonable suspicion seizures," and the "greatest delays *** will be tolerated in cases where the seizure was based on consent." *McGregory*, 2019 IL App (1st) 173101, ¶ 19. The reasonableness of a seizure's length depends on the totality of the circumstances. *E.g.*, *United States v. Sullivan*, 797 F.3d 623, 633 (9th Cir. 2015).

¶ 17    Further, the diligence of the police in pursuing their investigation is another factor that a court must consider when it balances the interests of the State and the individual. See *McGregory*, 2019 IL App (1st) 173101, ¶ 20 (citing *Burgard*, 675 F.3d at 1033). "When police act with diligence, courts can have greater confidence that the police interest is legitimate and that the intrusion is no greater than reasonably necessary," but when "police neglect to seek a warrant without any good explanation for that delay, it appears that the state is indifferent to searching the item and the intrusion on an individual's possessory interest is less likely to be justifiable." *Burgard*, 675 F.3d at 1033.

¶ 18    Given the extraordinary delay in seeking a warrant and the State's complete lack of diligence, we conclude that defendant's possessory interest in the phone outweighed the interest the State had based on its probable cause to search the phone.

¶ 19    We start by considering the State's interests. The State appears to assume without arguing that probable cause to seize the phone existed at all relevant times. Defendant does not contest that probable cause existed for the search of his phone. He does not even address the basis for the phone's seizure, which may have changed from his initial arrest to his second arrest. If defendant wished to claim that the seizure was based on less than probable cause, he needed to make that argument explicitly. Consequently, the point is forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) ("Points not argued [in the appellant's brief] are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."). On the other hand, nothing in the record suggests that defendant consented to the seizure. We thus treat the seizure as one based on probable cause, giving the State the intermediate level of interest.

¶ 20    The State's diligence in seeking a search warrant also goes to the measure of its interest. Here, the State cannot claim any diligence. It waited until just before trial to obtain a warrant, about 15 months, and it did not explain its delay. We are aware of no delay longer than 13 months that a court has deemed reasonable. As mentioned, the trial court here considered as persuasive the Second Circuit's summary order in *Howe*, in which it deemed reasonable a delay of about 13 months. The facts in *Howe* are unlike those here—the government in *Howe* had a partial explanation for the delay—the officer was under the mistaken impression that a search warrant already existed. Moreover, the delay in *Howe* appears to be something of an outlier in the case law. In *McGregory*, in which the First District found a delay of eight months to be unreasonable, the reviewing court noted that neither party had alerted it to any case with a reasonable delay longer

than three months. The First District cited *Stabile*, 633 F.3d at 235-36, where the Third Circuit deemed a delay of almost three months to be reasonable when the delay was caused by the investigating Secret Service agent's assignment to the presidential protection detail and the seizure was by third-party consent. With that background, the *McGregory* court deemed an eight-month delay to be "extraordinary." *McGregory*, 2019 IL App (1st) 173101, ¶ 22. The delay here, which was twice as long, is thus even more extraordinary. Like the Maui Police Department in *United States v. Uu*, 293 F. Supp. 3d 1209, 1216 (D. Haw. 2017), the police here, "[r]ather than working to promptly present a search warrant application to a judicial officer, *** acted at [their] leisure."

¶ 21　We turn now to defendant's interests. In the case of seizure of property, the interest at issue is generally possessory. *McGregory*, 2019 IL App (1st) 173101, ¶ 18. We conclude that the trial court gave insufficient weight to defendant's possessory interest in the phone. Primarily, the court incorrectly concluded that, because he could not use his phone while jailed, his possessory interest in the phone was effectively nonexistent. The court also erred in considering whether the phone's seizure affected defendant's liberty interests.

¶ 22　The deprivation caused by the seizure of a suspect's property is, for purposes of a reasonableness inquiry, a measure of the suspect's possessory interest in that property. See *United States v. Mitchell*, 565 F.3d 1347, 1351 (11th Cir. 2009) (*per curiam*) (the seizure of a personal computer was a significant interference with the suspect's possessory interest largely because of the tendency to rely on the information stored on such devices). The United States Supreme Court, in *Riley v. California*, 573 U.S. 373, 393-94 (2014), recognized the extraordinary difference between a cell phone and other potential objects of searches. The *Riley* Court's focus was on the privacy implications of cell phone data, but the discussion shows how, by 2014, cell phones were already distinctive in their many uses:

"Cell phones differ in both a quantitative and a qualitative sense from other objects that might be kept on an arrestee's person. The term 'cell phone' is itself misleading shorthand; many of these devices are in fact minicomputers that also happen to have the capacity to be used as telephones. They could just as easily be called cameras, video players, rolodexes, calendars, tape recorders, libraries, diaries, albums, televisions, maps, or newspapers.

One of the most notable distinguishing features of modern cell phones is their immense storage capacity. Before cell phones, a search of a person was limited by physical realities and tended as a general matter to constitute only a narrow intrusion on privacy. [Citation.] Most people cannot lug around every piece of mail they have received for the past several months, every picture they have taken, or every book or article they have read—nor would they have any reason to attempt to do so. And if they did, they would have to drag behind them a trunk of the sort held to require a search warrant *** rather than a container the size of the cigarette package *** [which did not require a warrant].

\* \* \*

Finally, there is an element of pervasiveness that characterizes cell phones but not physical records. Prior to the digital age, people did not typically carry a cache of sensitive personal information with them as they went about their day. Now it is the person who is not carrying a cell phone, with all that it contains, who is the exception. According to one poll, nearly three-quarters of smart phone users report being within five feet of their phones most of the time, with 12% admitting that they even use their phones in the shower." *Riley*, 573 U.S. at 393-95.

Our reliance on cell phones—particularly on the multifunctional cell phones now typically called "smartphones"—has only increased since the Supreme Court decided *Riley* in 2014.

¶ 23    The pervasiveness of cell phones that the *Riley* Court noted is a fair indicator of the disruptiveness of the seizure of such a phone, particularly a smartphone, at least if it is not replaced. Here, the State argues that, because cell phones in general are easily replaced, the seizure of a smartphone does not place a high burden on the person from whom it is taken. That is not a safe assumption. To be sure, some of the personal data accessed from a smartphone may be in "cloud" storage—"stored on remote servers rather than on the device itself." *Riley*, 573 U.S. at 397. As noted in *Riley*, "users often may not know whether particular information is stored on the device or in the cloud, and it generally makes little difference." *Riley*, 573 U.S. at 397. However, if a smartphone is seized, only the data in the cloud is potentially accessible to the user and then not always conveniently. For a typical person, only the seizure of a personal vehicle is likely to cause equal or greater disruption. Moreover, the court's ruling neglected financial issues. A smartphone is, again vehicles aside, often one of a person's more expensive possessions. We do not assume that everyone can easily afford to replace one, especially without having the old one to trade in. For these reasons, we deem that a suspect generally has a strong interest in the rapid return of a smartphone.

¶ 24    The discussed uses of a smartphone also require us to reject the trial court's conclusion that jailing diminishes an individual's possessory interest in a smartphone to near nothing. A smartphone carries with it a history of a person's communications. Therefore, if a detainee can give another access to his or her smartphone, that person can serve much more effectively as the detainee's agent than would be possible if the phone were seized, thus limiting the disruptive effect of the detention. By contrast, a person released on bond will likely be inconvenienced but generally

not be rendered *incommunicado*. It is thus possible that the seizure of a smartphone is more disruptive to a pretrial detainee than to a person who has been released. We thus cannot dismiss defendant's possessory interest as inherently minimized by his jailing.

¶ 25    The State relies on *United States v. Wright*, No. 4:08-cr-18, 2010 WL 841307, at *3, 9-10 (E.D. Tenn. Mar. 3, 2010), which held that a defendant has a diminished possessory interest in an electronic device that has been searched when the device *itself* is evidence of an offense and not merely a "container" for evidence. The State notes that, at defendant's trial, its witness testified that suspects found with contraband drugs and weapons often use cell phones to photograph the contraband. The State argues, "While [defendant's] possession of [the] cell phone would ordinarily have no evidentiary value apart from the contents, in this circumstance, possession of a cell phone, and its later discovered contents, corroborated [the inference that] Defendant knowingly possessed contraband."

¶ 26    This rule, applied to the circumstances here, does not favor the State. The State's own argument shows why this is so. It was only the "later discovered contents" that gave the phone evidentiary value. If the police had discovered within days of defendant's arrest that the phone contained only innocuous texts with defendant's family and cat pictures, then, by the State's own argument, the phone would have lacked evidentiary value. That discovery would thus remove justification for the phone's continued seizure. This appears to be an instance of the State attempting to justify the seizure by its fruits. Such arguments are attractive but mistaken; the exclusionary rule would be meaningless if it only excluded the results of fruitless searches.

¶ 27    The State asks that we, like the trial court, give weight to the fact that defendant's liberty interests were unaffected by the seizure of his phone. We decline. As *McGregory* noted, when courts consider how an individual's interests are impacted by the seizure of his property, "the

primary concern is with the invasion of the individual's possessory interest in the property, as *a seizure does not generally affect an individual's privacy or liberty interests*." (Emphasis added.) *McGregory*, 2019 IL App (1st) 173101, ¶ 18. We agree with *McGregory* that cases in which liberty interests are affected are best viewed as a qualitatively different class of case that should be analyzed under the rules concerning detentions of persons.

¶ 28 Citing *United States v. Martin*, 157 F.3d 46 (2d Cir. 1998), the State implies that the seizure of defendant's cell phone is more like "[t]he situation of a package intercepted and its delivery delayed" than like "a seizure of luggage which disrupts travel plans." In *Martin*, the Second Circuit contrasted the facts of its case, concerning an 11-day probable-cause seizure of a package, with the facts in *United States v. Place*, 462 U.S. 696 (1983), in which a reasonable-suspicion seizure of a traveler's luggage in an airport prevented him from continuing his travels. The *Martin* court was correct to draw the contrast. But, again, we reject the trial court's reliance on how the seizure impacted defendant's personal liberty. The analysis in *Place* treated the seizure of a traveler's luggage as the equivalent of a temporary seizure of the person under *Terry v. Ohio*, 392 U.S. 1 (1968). See *Place*, 462 U.S. at 702, 708. In language that *Place* quoted with approval, Professor Wayne R. LaFave addressed the potential *Terry* implications of the seizure of a traveler's luggage:

" '[In instances] when the authorities do not make it absolutely clear how they plan to reunite the suspect and his possessions at some future time and place, *seizure of the object is tantamount to seizure of the person*. This is because that person must either remain on the scene or else seemingly surrender his effects permanently to the police.' " (Emphasis added.) *Place*, 462 U.S. at 708 n.8 (quoting 3 Wayne R. LaFave, Search and Seizure § 9.6, at 72 (1st ed. Supp. 1982)).

Thus, because the basis for the detention of the *Place* defendant's luggage was reasonable suspicion, the standards for an appropriate length of seizure were those for a *Terry* stop. The lesson of *Place* is that particular circumstances can require a seizure of property to be considered under the standards for detentions of the person. We suspect that the typical case involving seizure of property will not amount to a detention of the person. If the seizure does reach that threshold, the court should apply the standards for a detention. In all other cases, the expectation is that a suspect's liberty interests are not implicated.[3]

¶ 29    Our conclusion that the delay in seeking a search warrant was unreasonable is consistent with the First District's holding in *McGregory*. There, the Chicago Police Department (CPD) seized equipment associated with credit card fraud, including several computers on May 13, 2013. The CPD held it until November 1, 2013, when the United States Secret Service took it as part of a credit card fraud investigation. The Secret Service obtained warrants to search the computers' contents in January 2014; the search resulted in the defendant being charged with identity theft. *McGregory*, 2019 IL App (1st) 173101, ¶ 3. Defendant sought suppression of the evidence, in part because the government had unreasonably delayed obtaining a warrant. The State argued that the

---

[3] It is possible that a seizure might affect a suspect's liberty interests in a very loose sense without being "tantamount to detention." If that is the law, such an effect on liberty interests would be particularly likely when the object seized is a smartphone. Smartphones are used to display airline tickets and boarding passes, to pay fares on public transportation, and to access ride sharing services; thus, seizure of a smartphone will certainly affect a person's ability to travel by some modes. We do not know the extent to which this effect caused this defendant any inconvenience. Neither party has discussed such a theory.

delay was not unreasonable, because "the officers were diligent in obtaining the search warrant and [the] defendant did not request the return of the equipment, did not allege any harm to his possessory interest in the equipment, and did not argue that he needed the equipment for legitimate reasons." *McGregory*, 2019 IL App (1st) 173101, ¶ 4. At a suppression hearing, the State's witnesses testified that the delay in seeking a warrant was due to multiple reasons, including that (1) the computers had been misplaced, (2) the Secret Service agent's investigation had been delayed when he was assigned presidential protection duties, and (3) an Internal Revenue Service investigation potentially overlapped with the Secret Service investigation. *McGregory*, 2019 IL App (1st) 173101, ¶¶ 6-11. The trial court deemed the delay unreasonable and suppressed the evidence. *McGregory*, 2019 IL App (1st) 173101, ¶ 13.

¶ 30    On appeal, the *McGregory* court noted that the defendant did not dispute the contention that probable cause existed for the computers' seizure. *McGregory*, 2019 IL App (1st) 173101, ¶ 17. As here, this was the primary factor favoring the State, although "it d[id] not automatically justify any delay in obtaining a search warrant." *McGregory*, 2019 IL App (1st) 173101, ¶ 24. On the other side, as here, the delay was "extraordinary." *McGregory*, 2019 IL App (1st) 173101, ¶ 22. Next, the defendant in *McGregory* asserted his possessory interest by asking the police not to seize his equipment, an act that "evidenced [his] possessory interest in the equipment and the effect its seizure had on that interest." *McGregory*, 2019 IL App (1st) 173101, ¶ 23. Here, although there is no clear evidence of defendant verbally asserting his interest, the iPhone was taken from his person, which strongly suggests his possessory interest. Finally, the diligence of the law enforcement officers in *McGregory* was "lacking"; the court did not think that the officers involved "completely or intentionally abdicated their duties," yet it could not find "the necessary urgency

in obtaining a warrant." *McGregory*, 2019 IL App (1st) 173101, ¶ 25. Here, diligence was more clearly lacking—law enforcement did not attempt to obtain a warrant until just before trial.

¶ 31 The balance of factors here is not identical to those in *McGregory*, but it is similar. If anything, given the long delay and the slight evidence of diligence by law enforcement, it appears to us that the case for suppression is more substantial than that in *McGregory*. Adding to this, the "equipment" seized in *McGregory* consisted of "computers and other equipment often associated with the manufacture of fraudulent credit cards" (*McGregory*, 2019 IL App (1st) 173101, ¶ 3). Given the pervasiveness of cell phones in daily life—as noted by the *Riley* Court (*Riley*, 573 U.S. at 395)—and the fact that defendant's phone was a smartphone, the seizure of defendant's iPhone was more likely to be disruptive than the seizure of less versatile equipment.

¶ 32 We conclude that the trial court erred in denying defendant's motion to suppress evidence obtained from his iPhone.

¶ 33                                   III. CONCLUSION

¶ 34 For the reasons stated, we (1) reverse the order of the circuit court of Du Page County denying defendant's motion to suppress, (2) vacate defendant's convictions, and (3) remand the matter for a new trial.

¶ 35 Vacated and remanded.

---

**No. 2-18-0991**

---

| | |
|---|---|
| **Cite as:** | *People v. Meakens*, 2021 IL App (2d) 180991 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Du Page County, No. 17-CF-1070; the Hon. Liam C. Brennan, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Lilien, and Kerry Goettsch, of State Appellate Defender's Office, of Elgin, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Robert B. Berlin, State's Attorney, of Wheaton (Lisa Anne Hoffman and Elizabeth Romano, Assistant State's Attorneys, of counsel), for the People. |

---