In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-2904

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RONNIE L. RICHMOND,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 09-CR-10135—**Michael M. Mihm**, *Judge.*

ARGUED MARCH 28, 2011—DECIDED MAY 25, 2011

Before KANNE, SYKES, and HAMILTON, *Circuit Judges.*

KANNE, *Circuit Judge.* When Peoria Police Officer Richard Linthicum frisked Ronnie Richmond in the early hours of October 9, 2009, he found Richmond was carrying a revolver. Having been previously convicted in Illinois of a crime punishable by imprisonment for more than a year, Richmond was subsequently charged with violating 18 U.S.C. § 922(g) for carrying the firearm. Richmond conditionally pled guilty to the charge, re-

serving his right to appeal the denial of his motion to suppress evidence from the allegedly unlawful search. Because the district court did not err in concluding that the search was constitutional, we affirm.

## I. BACKGROUND

Officer Linthicum, a nine-year veteran of the Peoria Police Department, was patrolling downtown Peoria around 3:30 a.m. on October 9, 2009. He observed five men walking near the federal courthouse at Monroe and Main Streets and stopped his squad car to watch them. One of the men, later identified as Richmond, stopped on the sidewalk and faced away from the squad car. While his friends continued on, Richmond remained there for approximately fifteen seconds with his hands and arms in front of him, thus blocked from the officer's sight. When Richmond turned and resumed walking, Officer Linthicum noticed a large bulge in Richmond's shirt that resembled a handgun handle hanging over his waistband.

Officer Linthicum turned a corner so that Richmond was walking toward the squad car. He rolled down the passenger window and called out to Richmond to come over and speak with him. Richmond walked toward the squad car, passing behind a row of newspaper boxes that obscured Officer Linthicum's line of sight. When Richmond reached the squad car, Officer Linthicum noticed that the waistline bulge was gone. After Richmond denied having any identification on him, Officer Linthicum asked Richmond his name. Perhaps because

of his outstanding warrant and parolee status, Richmond lied. A database search through the squad car's mobile computer reported "no record on file," which Officer Linthicum knew to be particularly unusual and potentially indicative of a false name.

Officer Linthicum got out of the squad car and approached Richmond, asking him to place his hands behind his back. During a cursory pat-down, Officer Linthicum felt a handgun in Richmond's left rear pants pocket. He handcuffed Richmond, removed the snub-nose .38-caliber revolver and a black ski mask, and secured Richmond in the backseat of the squad car. Richmond then gave Officer Linthicum his correct name and date of birth. The subsequent database search revealed Richmond's outstanding warrant.

Richmond moved in limine to suppress the introduction of the revolver as the fruit of an unlawful search. At the suppression hearing, the district court noted that the police report had omitted some significant and material details, but it found Officer Linthicum to be a credible witness. The court described Richmond's conduct as "very suspicious under the circumstances" and found that Officer Linthicum had the requisite reasonable suspicion to make the frisk "reasonable under the circumstances and, therefore, lawful." The district court denied Richmond's motion to suppress, and he conditionally pled guilty to violating 18 U.S.C. § 922(g). He reserved the right to appeal the district court's ruling on his motion.

## II. ANALYSIS

On appeal, Richmond contests neither the facts found by the district court nor the lawfulness of Officer Linthicum's initial investigatory stop. Richmond challenges only the district court's conclusion that the facts known to Officer Linthicum could support the reasonable suspicion necessary to justify a pat-down frisk. In a case like this, "when 'what happened?' is not at issue, the ultimate resolution of whether . . . reasonable suspicion existed is a question of law which we review de novo." *United States v. Carlisle*, 614 F.3d 750, 754 (7th Cir. 2010).

An officer may constitutionally stop and frisk an individual if two conditions are met. *Arizona v. Johnson*, 555 U.S. 323, ___, 129 S. Ct. 781, 784 (2009). "First, the investigatory stop must be lawful." *Id.* Richmond has not challenged the lawfulness of the initial stop in his case. Second, and germane to this appeal, "to proceed from a stop to a frisk, the police officer must reasonably suspect that the person stopped is armed and dangerous." *Id. See also United States v. McKoy*, 428 F.3d 38, 39 (1st Cir. 2005) ("It is insufficient that the stop itself is valid; there must be a separate analysis of whether the standard for pat-frisks has been met."). Reasonable suspicion requires less information than probable cause, but an officer still must rely on specific, articulable facts instead of a mere hunch. *United States v. Booker*, 579 F.3d 835, 838 (7th Cir. 2009). "Whether an officer has a reasonable suspicion . . . is a fact-specific inquiry that looks at the totality of the circumstances in light of common sense and practicality." *United States v. Tinnie*, 629 F.3d 749, 751 (7th Cir. 2011) (quotation marks omitted).

During the evidentiary hearing on Richmond's motion to suppress, Judge Mihm stated, "I do believe that the officer told the truth under oath." Richmond wisely doesn't challenge this credibility finding, *see United States v. Fiasche*, 520 F.3d 694, 697 (7th Cir. 2008) (special deference is given to district courts' credibility determinations in the motion to suppress context), and he accepts the court's findings of fact. Richmond argues, however, that these facts show that Officer Linthicum had only a hunch that he was carrying a firearm. We have little trouble finding that these uncontested facts support the conclusion that Officer Linthicum had "some articulable suspicion that the subject [was] concealing a weapon or pose[d] a danger to [him] or others," *United States v. Oglesby*, 597 F.3d 891, 894 (7th Cir. 2010) (*quoting United States v. Pedroza*, 269 F.3d 821, 827 (7th Cir. 2001)).

Officer Linthicum observed a conspicuous bulge above Richmond's waistband that was consistent with a revolver handle; both the shape and location of the bulge contributed to Officer Linthicum's concern that Richmond was armed. The disappearance of that bulge when the newspaper boxes obstructed Officer Linthicum's line of sight further suggested that he or a bystander could be endangered by a weapon that had been better hidden or even made ready. The "no record on file" report generated by the pseudonym indicated that Richmond might have been trying to hide information. *See United States v. Sholola*, 124 F.3d 803, 812-14 (7th Cir. 1997) (a "no record on file" report, while not conclusively incriminating, could contribute to an offi-

cer's reasonable suspicions). In such a circumstance, an officer might naturally be apprehensive of the potential for dangerous reaction to confrontation—especially if he already suspects the individual might be armed.

That any of these circumstances may have been independently susceptible to innocent explanation does not negate their collective contribution to Officer Linthicum's reasonable suspicion under the totality of the circumstances. *See Fiasche*, 520 F.3d at 697. Richmond also suggests that, because he was beckoned to the squad car's window, the officer could not have reasonably suspected him to be dangerous. We reject that argument. An officer may reasonably suspect that an individual would be dangerous to him or the public, especially if confronted by a more aggressive investigative stop, without expecting that the individual would react to the officer's initial low-key questioning by publicly murdering or maiming him in his squad car.

Richmond does not challenge the legality of Officer Linthicum's investigatory stop itself, but rather alleges that the pat-down was an unreasonable search. We conclude that, under the totality of the circumstances, Officer Linthicum had the requisite reasonable suspicion to conduct his minimally invasive pat-down of Richmond's clothing around his waist and hips. *See Oglesby*, 597 F.3d at 895. Accordingly, the district court did not err by denying Richmond's motion to suppress.

### III. CONCLUSION

Because the district court did not err in its determination that Officer Linthicum's pat-down was constitutional, we AFFIRM its denial of Richmond's motion to suppress.