In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-1863

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

JOSHUA BURGARD,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 10-CR-30085 DRH—**David R. Herndon**, *Chief Judge*.

ARGUED SEPTEMBER 14, 2011—DECIDED APRIL 2, 2012

Before WOOD, TINDER, and HAMILTON, *Circuit Judges*.

WOOD, *Circuit Judge*. Expecting to find evidence of child pornography, police officers seized Joshua Burgard's cell phone without a warrant. At that point, however, they seemed to have lost their sense of urgency: they did nothing with the phone right away and allowed six days to elapse before they applied for a search warrant. Once they had the warrant in hand, they searched the phone and, as anticipated, they found sexually ex-

plicit images of underage girls. Burgard pleaded guilty to two counts of receiving child pornography in violation of 18 U.S.C. § 2252(a)(2), and was sentenced to 210 months' imprisonment and 15 years of supervised release.

On appeal Burgard challenges only the district court's denial of his motion to suppress the photographs found on the phone. The pictures should have been excluded, in his view, because the police tarried too long before obtaining the warrant. Although we agree with Burgard that the officers did not act with perfect diligence, we do not find the delay here to be so egregious that it renders the search and seizure unreasonable under the Fourth Amendment. We therefore affirm.

**I**

On Wednesday, January 6, 2010, a friend of Burgard approached Sergeant Louis Wilson of the Smithton, Illinois, Police Department. The friend told Wilson that he had seen sexual images of young girls (possibly aged 14 or younger) on Burgard's cell phone, and that Burgard, 21 years old at the time, had bragged about having sex with them. This friend agreed to serve as a confidential informant and to text Wilson later that night if he was with Burgard and Burgard had the phone. The informant followed through with the plan: that night, he texted Wilson that he and Burgard were driving together in the informant's car. Wilson then stopped the informant's car and seized Burgard's phone. Burgard voluntarily went to the police station where Wilson entered the phone into evidence and gave Burgard a property receipt.

Wilson did not immediately apply for a state search warrant. Instead, he wrote a report about the seizure and forwarded it to Detective Mark Krug in nearby Collinsville, because Krug was assigned to work part-time with the FBI's Cyber Crimes Task Force. Wilson and Krug worked different shifts, however, and so Krug did not receive Wilson's report until the next day. After Krug read the report, he tried to contact Wilson to learn more details, but again the shift differences got in the way and the two were unable to speak until later that night. The next day, Friday, January 8, Krug contacted the United States Attorney's Office to inform it that he planned to draft a federal search warrant for the phone. An Assistant United States Attorney (AUSA) told him to proceed with drafting the affidavit.

Some time that same day, an armed robbery occurred in Collinsville. Because the armed robbery was more pressing, Krug put the cell phone warrant aside and worked on the armed robbery investigation. (We note at this juncture that Collinsville was, as of the time of the 2010 Census, a town of 26,016; it is located in rural Madison County, Illinois, and is the self-proclaimed Horseradish Capital of the World. See The Global Gourmet, http://www.globalgourmet.com/food/egg/egg1296/horscap.html#axzz1p7ZbAO2x, last visited March 28, 2012.) Krug may have continued to work on the robbery on Saturday, or he may have taken that day off. But by Sunday, he was able to return to Burgard's case and draft the affidavit. On Monday morning, January 11, he sent his draft to the AUSA and the two went back and forth making edits. The next day, the AUSA finally presented

a completed warrant application to the federal magistrate judge, who signed the warrant that day. Krug promptly searched the phone pursuant to the warrant and found numerous sexually explicit images of young girls.

Burgard conceded that the initial warrantless seizure of the phone was lawful (because of exigency and probable cause), but he sought to suppress the images on the basis of the six-day delay. The district court denied his motion to suppress on two grounds: (1) it did not find the delay to be unreasonable, and (2) even if it were, the good-faith exception to the exclusionary rule applied. Burgard pleaded guilty but reserved his right to challenge the denial of the suppression motion.

## II

This case requires us to address one narrow question: did the six-day delay in securing a warrant render the seizure of Burgard's phone unreasonable for purposes of the Fourth Amendment? (All parties agree that the warrant was necessary, and so we make no comment on that point. The search here was of the more invasive type excluded from our discussion in *United States v. Flores-Lopez,* No. 10-3803, 2012 WL 652504 at *7 (7th Cir. Feb. 29, 2012).) In general, "seizures of personal property are 'unreasonable within the meaning of the Fourth Amendment . . . unless . . . accomplished pursuant to a judicial warrant.'" *Illinois v. McArthur*, 531 U.S. 326, 330 (2001) (quoting *United States v. Place*, 462 U.S. 696, 701 (1983)). An officer may temporarily seize property without a warrant, however, if she has "probable cause to believe

that a container holds contraband or evidence of a crime" and "the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present." *Place*, 462 U.S. at 701.

Even a permissible warrantless seizure, such as the initial seizure here, must comply with the Fourth Amendment's reasonableness requirement. Thus, the Supreme Court has held that after seizing an item, police must obtain a search warrant within a reasonable period of time. See, *e.g.*, *Segura v. United States*, 468 U.S. 796, 812 (1984) ("[A] seizure reasonable at its inception because based on probable cause may become unreasonable as a result of its duration."). We reject the notion that anything in this court's opinion in *Lee v. City of Chicago*, 330 F.3d 456 (7th Cir. 2003), undermined *Segura*'s holding. In *Lee* we held that an individual cannot challenge the police's continued retention of his vehicle for failure to pay impound fees on Fourth Amendment grounds; he could only challenge the initial seizure. See 330 F.3d at 465-66. Here, in contrast, the police needed within a reasonable time to obtain a warrant before they could undertake a new search and seizure—that of the contents of the cell phone. This is the essence of Burgard's complaint, not the retention point that was central to *Lee*. See *United States v. Martin*, 157 F.3d 46, 54 (2d Cir. 1998) ("[W]here officers have probable cause to believe container contains contraband, it 'may be seized, *at least temporarily*, without a warrant.'") (quoting in parenthetical *United States v. Jacobson*, 466 U.S. 109, 121 (1984)). No other recognized exception to the warrant requirement covered the police detention of the contents of Burgard's phone.

When officers fail to seek a search warrant, at some point the delay becomes unreasonable and is actionable under the Fourth Amendment. *Moya v. United States*, 761 F.2d 322, 325 n.1 (7th Cir. 1984) ("Even if the officers had probable cause to believe Moya's bag contained contraband, there would be a question whether the three hour detention of the bag before seeking a search warrant was reasonable."). See generally Phillip B. Griffith, *Thinking Outside of the 'Detained' Box: A Guide to Temporary Seizures of Property Under the Fourth Amendment*, ARMY LAWYER, Dec. 2009, at 11, 13 ("Once government agents establish probable cause, this accordingly triggers the obligation to diligently pursue an authorization to search the property."). We review the district court's decision about the reasonableness of the delay prior to the issuance of the warrant *de novo,* see *United States v. Richmond*, 641 F.3d 260, 261-62 (7th Cir. 2011). The government does not argue that the magistrate judge was told about the length of the delay, and so we have not been asked to give special deference to any finding relating to its reasonableness (or lack thereof). See *United States v. McIntire*, 516 F.3d 576, 578 (7th Cir. 2008).

A

There is unfortunately no bright line past which a delay becomes unreasonable. Instead, the Supreme Court has dictated that courts must assess the reasonableness of a seizure by weighing "the nature and quality of the intrusion on the individual's Fourth Amendment

interests against the importance of the governmental interests alleged to justify the intrusion." *Place*, 462 U.S. at 703; see also *McArthur*, 531 U.S. at 331 (instructing courts to "balance the privacy-related and law enforcement-related concerns to determine if the intrusion was reasonable").

On the individual person's side of this balance, the critical question relates to any possessory interest in the seized object, not to privacy or liberty interests. "A seizure affects only the person's possessory interests; a search affects a person's privacy interests." *Segura*, 468 U.S. at 806. The longer the police take to seek a warrant, the greater the infringement on the person's possessory interest will be, for the obvious reason that a longer seizure is a greater infringement on possession than a shorter one. But unnecessary delays also undermine the criminal justice process in a more general way: they prevent the judiciary from promptly evaluating and correcting improper seizures. Thus the "brevity" of the seizure is "an important factor" for us to weigh. *Place*, 462 U.S. at 709. In addition, it can be revealing to see whether the person from whom the item was taken ever asserted a possessory claim to it—perhaps by checking on the status of the seizure or looking for assurances that the item would be returned. If so, this would be some evidence (helpful, though not essential) that the seizure in fact affected her possessory interests. See, *e.g.*, *United States v. Stabile*, 633 F.3d 219, 235-36 (3d Cir. 2011) (defendant's failure to seek return of his property for more than 18 months was a factor that reduced the weight the court gave to his interest in the item).

Turning to the state's side, a key factor in our analysis is the strength of the state's basis for the seizure. The state has a stronger interest in seizures made on the basis of probable cause than in those resting only on reasonable suspicion. All else being equal, the Fourth Amendment will tolerate greater delays after proba-ble-cause seizures. Compare *McArthur*, 531 U.S. at 331 (two-hour delay after probable-cause seizure of house was reasonable), with *Place* 462 U.S. at 709 (90-minute delay after reasonable-suspicion seizure of suitcase was unreasonable); see also *United States v. Martin*, 157 F.3d 46 (2d Cir. 1998) (11-day delay after probable cause seizure of package was reasonable).

Finally, when we balance these competing interests we must "take into account whether the police diligently pursue[d] their investigation." *Place*, 462 U.S. at 709. When police act with diligence, courts can have greater confidence that the police interest is legitimate and that the intrusion is no greater than rea-sonably necessary. *McArthur*, 531 U.S. at 331 (upholding two-hour delay because it was "no longer than rea-sonably necessary for the police, acting with diligence, to obtain the warrant"). When police neglect to seek a warrant without any good explanation for that delay, it appears that the state is indifferent to searching the item and the intrusion on an individual's possessory interest is less likely to be justifiable. Compare *United States v. Mitchell*, 565 F.3d 1347, 1351 (11th Cir. 2009) (21-day delay was unreasonable where "[t]he only reason Agent West gave for the twenty-one-day delay in applying for a search warrant was that he 'didn't see

any urgency'"), with *United States v. Vallimont*, 378 F. App'x 972, 976 (11th Cir. 2010) (45-day delay reasonable where officers' attention was diverted to other matters but officers continued to work on the search warrant).

B

Applying these factors, we cannot say that the six-day delay here was so long that the seizure was unreasonable. We acknowledge that Burgard had a strong interest in possessing his cell phone. At no point before the seizure did he abandon the phone or relinquish it to a third party. He even asserted his possessory interests over the phone by voluntarily going to the police station to obtain a property receipt, which would help him obtain the phone's return.

On the other side of the equation, law enforcement's interests were also strong. Burgard has conceded that police had probable cause to believe that the phone would contain evidence of a crime. Although the Supreme Court found a 90-minute delay to be unreasonable in *Place*, 462 U.S. at 696, the Court said nothing to suggest that 90 minutes is an outer limit for all cases. For one thing, the seizure in *Place* was made on the basis of reasonable suspicion, not probable cause. See *Martin*, 157 F.3d at 64. And even in a reasonable suspicion case, 90 minutes would not necessarily be the outer limit, as the length of a delay is not the only relevant factor. See *United States v. Ganser*, 315 F.3d 839, 844 (7th Cir. 2003)

(four-day delay following reasonable suspicion seizure was not unreasonable).

Given these facts, Burgard leans heavily on the diligence factor, arguing that the officer was not diligent because he should have been able to submit the warrant application more quickly. We are willing to assume that Burgard is correct on this point. It strikes us as implausible that an officer with over 14 years of experience, like Krug, could not write a two-page affidavit in fewer than six days, especially when the affidavit drew largely on information that was contained in the initial report that he received from Wilson. The government argues that the delay was attributable to Krug's lack of familiarity with federal cell-phone warrants, but that explanation is not persuasive given the fact that the bulk of the warrant appears to be boilerplate. And although it is true that the detective's attention was diverted by a more serious robbery case, this did not take place until Friday, after three days had already passed.

But police imperfection is not enough to warrant reversal. With the benefit of hindsight, courts "can almost always imagine some alternative means by which the objectives of the police might have been accomplished," but that does not necessarily mean that the police conduct was unreasonable. *United States v. Sharpe*, 470 U.S. 675, 686-87 (1985). Krug may theoretically have been able to work more quickly, but his delay was not the result of complete abdication of his work or failure to "see any urgency" as in *Mitchell*, 565 F.3d at 1351. He wanted to be sure that he had all the information he

needed from the seizing officer and he wanted to consult with the AUSA, all the while attending to his other law enforcement duties. We do not want to discourage this sort of careful, attentive police work, even if it appears to us that it could or should have moved more quickly. Encouraging slapdash work could lead to a variety of other problems. See, *e.g.*, *Groh v. Ramirez*, 540 U.S. 551 (2004) (warrant failed to meet Fourth Amendment's particularity requirement, because of failure in copying paragraph from warrant application to warrant).

After seizing an item without a warrant, an officer must make it a priority to secure a search warrant that complies with the Fourth Amendment. This will entail diligent work to present a warrant application to the judicial officer at the earliest reasonable time. We find that this standard was met here and that the six-day delay was not so unreasonable as to violate the Constitution. Burgard argues that this outcome could "give authorities license to retain seized property for long periods of time merely because they chose not to devote a reasonable amount of resources and sufficient experienced personnel" to the task of obtaining warrants. Given the fact-specific nature of these inquiries, we think these fears are overblown. It remains possible that a police department's failure to staff its offices adequately or to give officers sufficient resources to process warrant applications could lead to unreasonable delays. But this case does not present that sort of egregious abdication of duties.

## III

The district court reached the same conclusion as we do on the merits of the Fourth Amendment, but it then went on to address the government's alternative argument that the good-faith exception to the exclusionary rule should apply. The court concluded that even if the delay was unreasonably long, suppression would be inappropriate because the officers searched the phone in reliance on a warrant, and it thought that this triggered the good-faith exception of *United States v. Leon*, 468 U.S. 897 (1984). This analysis, we believe, extended *Leon* too far.

When an officer waits an unreasonably long time to obtain a search warrant, in violation of the Fourth Amendment, he cannot seek to have evidence admitted simply by pointing to that late-obtained warrant. If this were all that was needed, evidence would never be suppressed following these types of violations because, by definition, the police would always have a warrant before they searched. In the line of Supreme Court decisions on which we have relied, the question is not whether police ultimately obtained a warrant; it is whether they failed to do so within a reasonable time. The Court has never suggested that this type of violation is wholly exempt from the exclusionary rule. See *Place*, 462 U.S. at 700 (upholding grant of motion to suppress because of a delay of 90 minutes after seizing luggage even though officers eventually searched under a warrant); *McArthur*, 531 U.S. at 326 (finding delay in obtaining a warrant reasonable without suggesting that

*Leon*'s good-faith rule would have applied). Furthermore, removing this sort of police misconduct from the ambit of the exclusionary rule would have significant implications: it would eliminate the rule's deterrent effect on unreasonably long seizures. Police could seize any item—a phone, a computer, a briefcase, or even a house—for an unreasonably long time without concern for the consequences, evidentiary and otherwise.

The Ninth Circuit appears to be the only court that has specifically addressed this question. In *United States v. Song Ja Cha* the court held that "the exclusionary rule is applicable where seizures are unconstitutionally long" in order "to deter unreasonable police behavior and to provide for judicial determination of probable cause." 597 F.3d 995, 1006 (9th Cir. 2010). It rejected the government's argument that the good-faith exception applied. In contrast to *Leon*, in which it was reasonable for a "well trained officer" to believe the search warrant was supported by probable cause, *id.* at 1005 (quoting *Leon*, 468 U.S. at 922 n.23), it is unreasonable for officers to believe that a seizure may drag on "longer than necessary for the police, acting diligently, to obtain the warrant," *id.* (quoting *McArthur*, 531 U.S. at 332). The court held that the exclusionary rule applied even under the Supreme Court's most recent good-faith case, *United States v. Herring*, 555 U.S. 135 (2009), because the officer's deliberate failure to seek a warrant with diligence was "sufficiently culpable that . . . deterrence is worth the price paid by the justice system." *Song Ja Cha*, 597 F.3d at 1005 (quoting *Herring*, 555 U.S. at 144).

We do not categorically rule out the possibility of a *Leon* argument in this line of cases. There may be a situation in which the unreasonableness of a delay is a very close call, and an officer could not be charged with knowledge that the delay violated the law. See, *e.g.*, *United States v. Pitts*, 322 F.3d 449 (7th Cir. 2003) ("Given our prior holdings in similar cases, and given the disagreement over the reasonableness of the length of the detention by the magistrate and the district court judge, we do not believe the officer executing the warrant could be charged with knowing the search was illegal . . . even though the magistrate authorized it."). All we say is that the good-faith exception is not automatically available as soon as a warrant materializes. A well-trained officer is presumed to be aware that a seizure must last "no longer than reasonably necessary for the police, acting with diligence, to obtain a warrant." *McArthur*, 531 U.S. at 332. When police fail to act with such diligence, exclusion will typically be the appropriate remedy.

**IV**

The Supreme Court has never retreated from the proposition that the exclusionary rule applies to cases of unreasonable delay. That said, we recognize that one might imagine other remedies for the harm caused in these situations—possibly some kind of Fifth Amendment violation, or a damages remedy for the loss of the use of the phone. But those hypothetical possibilities do not change the ruling in *Segura* that the duration

between a seizure of a container and the issuance of a warrant to search its contents may become unreasonable for Fourth Amendment purposes, thereby requiring suppression of the evidence. 468 U.S. at 812. This case, however, just like *Segura,* is one in which the delay was not constitutionally unreasonable. We AFFIRM the district court's denial of Burgard's suppression motion and thus the judgment of the court.