1
 2025 CO 47 The People of the State of Colorado, Plaintiff-Appellant: v. Arthur S. Mills. Defendant-Appellee: No. 24SA148
Supreme Court of Colorado, En Banc
June 30, 2025
          
 Interlocutory Appeal from the District Court District Court,
 City and County of Denver, Case Nos. 23CR4306 & 21CR6486
 Honorable Adam J. Espinosa, Judge
 
 
          
 Attorneys for Plaintiff-Appellant: Beth McCann, District
 Attorney, Second Judicial District Ellen Michaels, Deputy
 District Attorney Denver, Colorado
 
 
          
 Attorneys for Defendant-Appellee: Megan A. Ring, Public
 Defender Christopher Smallwood, Deputy Public Defender
 Denver, Colorado
 
 2
 
           CHIEF
 JUSTICE MÁRQUEZ delivered the Opinion of the Court, in
 which JUSTICE BOATRIGHT, JUSTICE HOOD, JUSTICE GABRIEL,
 JUSTICE HART, JUSTICE SAMOUR, and JUSTICE BERKENKOTTER
 joined.
 
 3
 
          
 OPINION
 
 
          
 MÁRQUEZ CHIEF JUSTICE
 
 
          ¶1
 In this interlocutory appeal under section 16-12-102(2),
 C.R.S. (2024) and C.A.R. 4.1, the People seek review of the
 trial court's order suppressing drug evidence found in
 Defendant Arthur S. Mills's vehicle. The trial court
 reasoned that because the Denver Police Department
 ("Denver Police") did not apply for a warrant to
 search Mills's vehicle until three days after seizing it,
 the delay rendered the seizure unconstitutional.
 
 
          ¶2
 In general, we assess the reasonableness of a seizure by
 weighing the nature and quality of the intrusion on an
 individual's Fourth Amendment interests against the
 importance of the government's law enforcement interests
 asserted to justify the intrusion. That overarching balance
 of interests applies in this context as well. To determine
 whether a seizure of property based on probable cause was
 reasonably extended to apply for a warrant to search that
 property, we establish a four-factor balancing test that
 considers (1) the length of the delay, (2) the nature and
 strength of the individual's possessory interest in the
 property seized, (3) the strength of the government's
 justification for the delay, and (4) the government's
 diligence in applying for a search warrant.
 
 
          ¶3
 Applying that balancing test here, we conclude that the delay
 between the initial seizure and the search of Mills's
 vehicle was reasonable. We therefore
 
 4
 
 reverse the trial court's suppression order, and we
 remand for further proceedings consistent with this opinion.
 
 
          I.
 Facts and Procedural History
 
 
          ¶4
 On a Saturday afternoon during a covert surveillance
 operation in a high crime area of Denver, undercover police
 officers observed Mills drive into a Walgreens parking lot.
 Officer Derek Streeter witnessed a man enter Mills's
 vehicle, Mills grab a backpack from the back seat, and the
 two men huddle over the center console-behaviors that the
 officer believed were consistent with a drug transaction. The
 other man left Mills's vehicle. Neither went into the
 Walgreens. While Mills was still in the parking lot, Officer
 Streeter learned that Mills had a substantial history of
 narcotics distribution. When Mills drove out of the parking
 lot without using proper turn signals, Officer Streeter
 notified fellow officers to make a traffic stop.
 
 
          ¶5
 During the traffic stop, Mills failed to produce a
 driver's license or proof of insurance for the Range
 Rover he was driving; instead, he provided insurance for
 three other high-end vehicles. He also used three different
 cell phones during the stop.
 
 
          ¶6
 Mills refused to get out of the car and became contentious
 and uncooperative. Although the officers believed they had
 probable cause to arrest him, they did not want to break into
 the vehicle and physically remove him. The
 
 5
 
 officers decided to consult Detective Kevin Burke, one of
 four narcotics detectives, all of whom were off duty.
 Detective Burke instructed the officers to secure the
 vehicle, hold it for him, and obtain a search warrant instead
 of conducting a search on-scene. Burke also informed the
 officers that he would take the investigation from there. The
 officers issued Mills a citation for driving without a valid
 driver's license and insurance. They permitted him to
 have an acquaintance come to the scene to move the vehicle a
 short distance to park it legally. Mills and the acquaintance
 left the car, and the officers impounded the vehicle.
 
 
          ¶7
 Detective Burke did not take any action to apply for a
 warrant to search the vehicle later that evening or Sunday,
 while he remained off duty. Upon his return to work on
 Monday, he requested a K-9 sniff of the vehicle. The K-9
 detective informed Detective Burke that the unit was off duty
 on Mondays and asked if the sniff could be performed on
 Tuesday. Detective Burke assented, believing that because the
 police had seven days to execute a search warrant, they could
 hold the vehicle for up to a week. He spent Monday
 familiarizing himself with the case, drafting the search
 warrant, and attending to other cases.
 
 
          ¶8
 On Tuesday, Detective Burke contacted the K-9 unit again. The
 K-9 unit performed the dog sniff that morning, and the dog
 alerted to the presence of drugs inside the vehicle.
 Detective Burke completed the search warrant application and
 
 6
 
 affidavit and submitted them late that afternoon. Just over
 an hour later, a judge signed the warrant.
 
 
          ¶9
 Over the following few days, Denver Police tried
 unsuccessfully to obtain Mills's cooperation to search
 his vehicle without forcing entry. Detective Burke eventually
 entered the vehicle through a side window and found a
 backpack in the car containing methamphetamine, heroin,
 cocaine, fentanyl, and two digital scales with white residue.
 The People charged Mills with four counts of possession with
 intent to distribute a controlled substance under section
 18-18-405, C.R.S. (2024).[1]
 
 
          ¶10
 Mills later filed a motion to suppress the evidence gathered
 from his vehicle. As relevant here, Mills argued that the
 officers lacked probable cause to seize the vehicle and even
 if the initial seizure was valid, Denver Police unlawfully
 extended the seizure in violation of the Fourth Amendment to
 the U.S. Constitution and article II, section 7 of the
 Colorado Constitution because Detective Burke waited until
 the following Tuesday to apply for a warrant. The People
 responded that the officers had probable cause to seize the
 vehicle and the delay in seeking the warrant was reasonable
 under the totality of the circumstances.
 
 7
 
          ¶11
 Following a hearing, the Denver County District Court granted
 Mills's motion. In an oral ruling, the trial court
 concluded that although Denver Police had probable cause to
 seize Mills's vehicle, they extended the seizure for a
 period that was longer than necessary to apply for a search
 warrant. Citing Chambers v. Maroney, 399 U.S. 42
 (1970), the trial court reasoned that the reasonableness of
 any delay in this context is grounded in necessity; that is,
 "the car or item that is being seized to obtain a
 warrant can be held for whatever period is necessary to
 obtain the warrant." Applying this standard, the court
 concluded that the seizure of Mills's vehicle was
 unreasonable because the court was "unconvinced . . .
 that the car was held for only the period of time necessary
 to obtain the warrant." After expressing concern that
 the off-duty detective did not seek a warrant over the
 weekend, the court ultimately concluded that the car was
 seized for longer than necessary because the warrant could
 have been obtained on Monday, when Detective Burke got back
 to work.[2] The court therefore suppressed the
 evidence of narcotics found in the vehicle.
 
 
          ¶12
 The People filed a motion to reconsider, which the trial
 court denied. The People then filed this interlocutory appeal
 under C.A.R. 4.1, seeking relief from the trial court's
 ruling.
 
 8
 
          ¶13
 Because we agree with the People that law enforcement's
 three-day delay in applying for the search warrant was
 reasonable under the circumstances of this case, we reverse
 the trial court's suppression order.
 
 
          II.
 Standard of Review
 
 
          ¶14
 A trial court's suppression order presents a mixed
 question of law and fact. People v. McIntyre, 2014
 CO 39, ¶ 13, 325 P.3d 583, 586-87. We defer to the trial
 court's findings of historical fact when competent
 evidence in the record supports them. People v.
 Davis, 2019 CO 84, ¶ 18, 449 P.3d 732, 738.
 However, we review the legal effect of those facts de novo.
 People v. Deaner, 2022 CO 43, ¶ 10, 517 P.3d
 66, 69.
 
 
          III.
 Analysis
 
 
          ¶15
 First, we establish that when the police delay seeking a
 warrant to search property they have seized with probable
 cause, the constitutionality of the extended seizure turns on
 the reasonableness of the delay. Next, we set forth a
 balancing test for determining whether law enforcement's
 delay in seeking a warrant in such circumstances is
 reasonable. Finally, we apply the new test to the facts
 before us.
 
 9
 
          A.
 Reasonableness Is the Touchstone for Assessing the
 Constitutionality of a Seizure
 
 
          ¶16
 Because the Fourth Amendment prohibits "unreasonable
 searches and seizures," U.S. Const. amend.
 IV,[3]
 whether the seizure here was unconstitutional turns on
 whether it was reasonable. Indeed, the Supreme Court and this
 court have consistently interpreted questions involving the
 Fourth Amendment through the lens of reasonableness.
 People v. Thompson, 2021 CO 15, ¶ 20, 500 P.3d
 1075, 1079 ("[T]he ultimate touchstone of the Fourth
 Amendment is reasonableness." (citing Brigham City
 v. Stuart, 547 U.S. 398, 403 (2006))).
 
 
          ¶17
 In general, seizures of personal property are unreasonable
 unless accomplished pursuant to a warrant based on probable
 cause. Illinois v. McArthur,
 
 10
 
 531 U.S. 326, 330 (2001). However, if the police have
 probable cause to believe that a person's property
 contains contraband or evidence of a crime and it is
 necessary to seize or secure the property immediately to
 prevent its destruction or disappearance, the Fourth
 Amendment allows them to seize the property without a
 warrant-so long as they follow up by applying for a warrant
 to search the property. United States v. Place, 462
 U.S. 696, 701 (1983); United States v. Smith, 967
 F.3d 198, 205 (2d Cir. 2020).
 
 
          ¶18
 Law enforcement may not seize and hold property indefinitely
 without seeking a warrant to search that property. In other
 words, when officers seize property for a search but
 "fail to seek a search warrant, at some point the delay
 becomes unreasonable" and runs afoul of the Fourth
 Amendment. United States v. Burgard, 675 F.3d 1029,
 1032 (7th Cir. 2012) (citing Moya v. United States,
 761 F.2d 322, 325 n.1 (7th Cir. 1984)); see also Segura
 v. United States, 468 U.S. 796, 812 (1984) ("[A]
 seizure reasonable at its inception because [it was] based
 upon probable cause may become unreasonable as a result of
 its duration or for other reasons."). The question thus
 becomes whether a delay by the police in seeking the warrant
 renders a seizure unconstitutional.
 
 
          ¶19
 Mills relies on Chambers to argue that the proper
 standard of reasonableness is necessity; that is, that a
 vehicle may be seized and held without a warrant only for
 "whatever period is necessary to obtain a warrant for
 the search." 399 U.S. at
 
 11
 
 51. But Chambers did not actually apply a necessity
 standard. There, the police stopped a station wagon that
 matched the description of a vehicle involved in a robbery an
 hour earlier. Id. at 44. Because one of the station
 wagon's occupants also matched the description of a
 suspect in the robbery, the police arrested the occupants,
 drove the vehicle to the police station, and searched it
 without a warrant. Id. The Court upheld the
 warrantless search of the vehicle at the police station,
 reasoning that there was probable cause to search the vehicle
 when it was initially stopped and that an immediate search of
 a car is constitutionally permissible because a vehicle is
 movable and is thus a "fleeting target" for a
 search. Id. at 51-52. The Court observed that,
 "we see no [constitutional] difference between . . .
 seizing and holding a car before presenting the probable
 cause issue to a magistrate and . . . carrying out an
 immediate search without a warrant." Id. at 52.
 It concluded that either course was reasonable under the
 Fourth Amendment. Id. In sum, although
 Chambers mentioned that property may be "held
 without a warrant for whatever period is necessary to obtain
 a warrant for [a] search," id. at 51, the
 police chose to conduct a warrantless search in that case,
 id. at 44. In other words, Chambers did not
 analyze a situation in which the police seized a vehicle and
 then held it to seek a warrant. Chambers therefore
 cannot be read to establish a rule limiting police to holding
 a seized vehicle for "only whatever period is
 necessary" to obtain a warrant.
 
 12
 
          ¶20
 More recently in McArthur, the Court upheld as
 lawful police officers' actions in restricting a resident
 from re-entering his trailer for two hours while they sought
 a search warrant for marijuana. 531 U.S. at 332. In assessing
 the reasonableness of the officers' actions, the Court
 noted that the restraint was imposed for a limited period
 that was "no longer than reasonably necessary for the
 police, acting with diligence, to obtain the warrant."
 Id. In so doing, however, the Court did not purport
 to establish a necessity standard; indeed, it later remarked
 that it had never "held unlawful a temporary seizure
 that was supported by probable cause and was designed to
 prevent the loss of evidence while the police diligently
 obtained a warrant in a reasonable period."
 Id. at 334 (emphasis added).
 
 
          ¶21
 Having confirmed that the touchstone for the Fourth Amendment
 analysis in this context remains reasonableness, we now turn
 to the appropriate factors to determine whether a delay in
 applying for a search warrant renders an earlier seizure
 based on probable cause unreasonable.
 
 
          B.
 Courts Should Apply a Balancing Test to Determine the
 Reasonableness of a Delay in Seeking a Warrant
 
 
          ¶22
 Courts generally assess the reasonableness of a seizure by
 balancing "the nature and quality of the intrusion on
 the individual's Fourth Amendment interests against the
 importance of the governmental interests alleged to justify
 the intrusion." Place, 462 U.S. at 703; see
 also McArthur, 531 U.S. at 331 ("[W]e balance
 
 13
 
 the privacy-related and law enforcement-related concerns to
 determine if the intrusion was reasonable."). In
 assessing the reasonableness of a seizure that is extended to
 apply for a search warrant, federal courts have weighed the
 individual's Fourth Amendment interests by evaluating the
 length of the seizure and the nature and strength of the
 individual's possessory interest. In Smith, for
 example, the Second Circuit instructed courts to consider the
 length of the delay in seeking a search warrant, the nature
 of the seized property and its importance to the defendant,
 and whether the defendant's property interest had been
 reduced by consenting to the seizure or voluntarily
 relinquishing control of the property to a third party. 967
 F.3d 198, 206-08 (2d Cir. 2020). Similarly, in
 Burgard, the Seventh Circuit noted that the length
 of the seizure is a factor, observing that the longer the
 police take to seek a warrant, the greater the infringement
 on the person's possessory interest. 675 F.3d 1029, 1033
 (7th Cir. 2012). Importantly, the court in Burgard
 emphasized that "[o]n the individual person's side
 of this balance, the critical question relates to any
 possessory interest in the seized object, not to privacy or
 liberty interests." Id.
 
 
          ¶23
 On the government's side of the balance, federal courts
 have evaluated the strength of the government's
 justification for the delay and its diligence in applying for
 a warrant. In Smith, the court observed that the
 fact that an officer has a heavy caseload or is responsible
 for a large geographical district does not,
 
 14
 
 without more, justify waiting an unlimited amount of time to
 apply for a warrant; rather, the "Fourth Amendment
 imposes a time-sensitive duty to diligently apply for a
 search warrant if an item has been seized for that very
 purpose, and all the more so if the item has been
 warrantlessly seized." 967 F.3d at 210. In
 Burgard, the court observed that the officer's
 delay was not the result of an abdication of his work or the
 failure to see any urgency in the matter, but rather because
 the officer wanted to "be sure that he had all the
 information he needed from the seizing officer" and to
 consult with the prosecuting attorney, while attending to his
 other duties. 675 F.3d at 1034. The court noted that
 "[w]e do not want to discourage this sort of careful,
 attentive police work, even if it appears to us that it could
 or should have moved more quickly," because
 "[e]ncouraging slapdash work could lead to a variety of
 other problems." Id.
 
 
          ¶24
 Drawing from these cases, we adopt a four-factor balancing
 test that weighs the totality of the circumstances, focusing
 on (1) the length of the delay, (2) the nature and strength
 of an individual's possessory interest in the property
 seized, (3) the strength of the government's
 justification for the delay, and (4) the government's
 diligence in applying for a search warrant.
 
 
          ¶25
 The first factor, the length of the delay, is a
 context-dependent review of the length of the delay between
 the initial seizure and the search warrant application.
 See Smith, 967 F.3d at 206-07. Although there is
 "no bright line past which a delay
 
 15
 
 becomes unreasonable," the longer the police take to
 seek a warrant, generally the greater the infringement on the
 individual's possessory interest in the seized property.
 Burgard, 675 F.3d at 1033. If the police have
 probable cause to seize an individual's property in the
 first place, they usually should be able to promptly
 articulate that probable cause in an application for a
 warrant. Smith, 967 F.3d at 207.
 
 
          ¶26
 The second factor, the nature and strength of the
 individual's possessory interest, contains two prongs.
 Courts should begin by evaluating the nature of the item
 seized. For example, a personal electronic device such as a
 smartphone or laptop is likely used by the individual for
 communication or the storage of immense amounts of personal
 data (much of which may be wholly unrelated to the
 investigation for which the item was seized); such items may
 carry a stronger possessory interest than a backpack or
 suitcase containing less sensitive personal information.
 Id. at 208; see also United States v.
 Laist, 702 F.3d 608, 614 (11th Cir. 2012) (citing
 United States v. Mitchell, 565 F.3d 1347, 1353 (11th
 Cir. 2009)).
 
 
          Relatedly,
 courts should evaluate the strength of the individual's
 possessory interest. For example, courts may take into
 account whether the individual's interest may have been
 diminished by entrusting the item to a third party, see
 United States v. Martin, 157 F.3d 46, 54 (2d Cir. 1998)
 (concluding that a delay after a "seizure is necessarily
 less intrusive where 'the owner has relinquished control
 
 16
 
 of the property to a third party'" such as the
 United States Parcel Service (quoting Place, 462
 U.S. at 705 and n.6)), or reasserted by checking on the
 status of the seizure or seeking the return of the item,
 Burgard, 675 F.3d at 1033. Thus, the second factor
 considers the degree to which the extended seizure
 interrupted the individual's life. Laist, 702
 F.3d at 613 (stating that one factor in a court's review
 of the reasonableness of an extended seizure is "the
 significance of the interference with the person's
 possessory interest" (citing Mitchell, 565 F.3d
 at 1351)).
 
 
          ¶27
 The third factor, the strength of the government's
 justification for the delay, objectively examines the
 reasonableness of the delay given the resources available to
 the government and the complexity of the case.
 Burgard, 675 F.3d at 1033 (noting that when the
 police lack "any good explanation" for a delay in
 seeking a warrant, "it appears that the state is
 indifferent to searching the item and the intrusion on an
 individual's possessory interest is less likely to be
 justifiable"); Smith, 967 F.3d at 210
 (observing that the record in that case did not reflect any
 particular investigation or duty that delayed the officer in
 applying for a search warrant); United States v.
 Christie, 717 F.3d 1156, 1163 (10th Cir. 2013) (noting
 that the agent who seized the defendant's property was
 called upon to help with indisputably higher priority
 undercover operations in other cases).
 
 
          ¶28
 The fourth factor examines the government's diligence in
 applying for a search warrant. Smith, 967 F.3d at
 202 (observing that when the police
 
 17
 
 "temporarily seize a suspect's personal
 property" with probable cause and the intent "to
 apply for a warrant to search the property for evidence of a
 crime...., the Fourth Amendment requires that they act with
 diligence to apply for a search warrant"). Consideration
 of the government's diligence safeguards against
 unreasonably long seizures by imposing a "time-sensitive
 duty" to apply for a search warrant. Id. at
 210. At the same time, evaluation of the government's
 diligence allows for appropriately "careful, attentive
 police work." Burgard, 675 F.3d at 1034.
 
 
          ¶29
 We emphasize that this balancing test is fact-intensive,
 context-specific, and dependent on the totality of the
 circumstances. Christie, 717 F.3d at 1162
 ("What reasonably justifies a brief delay . . . may not
 reasonably justify a longer one."). Because the standard
 is reasonableness, not necessity, the government is not
 required to apply for a search warrant at the earliest
 possible time or "pursue[] the least intrusive course of
 action." United States v. Sullivan, 797 F.3d
 623, 633 (9th Cir. 2015) (quoting United States v.
 Hernandez, 313 F.3d 1206, 1213 (9th. Cir. 2002));
 see also Burgard, 675 F.3d at 1034 (noting that
 "police imperfection is not enough to warrant
 reversal" because "[w]ith the benefit of hindsight,
 courts 'can almost always imagine some alternative means
 by which the objectives of the police might have been
 accomplished,' but that does not necessarily mean that
 the police
 
 18
 
 conduct was unreasonable" (quoting United States v.
 Sharpe, 470 U.S. 675, 686-87 (1985))).
 
 
          ¶30
 Having adopted this balancing test, we now apply it to the
 facts before us.
 
 
          C.
 Application
 
 
          ¶31
 Weighing the factors we have identified, we conclude that the
 delay in this case to apply for a search warrant was
 reasonable. Accordingly, the extended seizure did not violate
 the Fourth Amendment.
 
 
          ¶32
 First, the three-day delay in this case was relatively brief
 (ultimately less than seventy-two hours). This is especially
 true considering that much of this time fell over a weekend
 while the lead investigating officer was off duty.
 Martin, 157 F.3d at 54 (noting that an eleven-day
 delay that included two weekends and a holiday "could
 explain the difficulty in promptly obtaining the [search]
 warrant"). ¶33 Second, we examine the strength and
 nature of Mills's possessory interest in the seized
 vehicle. Although a vehicle can be used to store personal
 possessions and is obviously an important (and sometimes
 exclusive) means of transportation, in this case, the record
 indicates that Mills had little to no ability to lawfully use
 the vehicle because he failed to produce a valid driver's
 license or proof of insurance for the vehicle. Furthermore,
 nothing in the record suggests that the vehicle was
 Mills's essential means of transportation-he appeared to
 have three
 
 19
 
 other vehicles at his disposal.[4] The record is also inconclusive
 regarding whether Mills's attorney requested that Denver
 Police return Mills's vehicle in a message left for
 Detective Burke on the night when the police seized the
 vehicle.
 
 
          ¶34
 Third, we examine the strength of Denver Police's
 justification for the delay. Even though the police believed
 they had probable cause to seize and search the vehicle for
 evidence of drug-related crimes, Mills's conduct raised
 concerns for officer safety that prompted a more cautious
 approach. The record also reflects that the on-scene officers
 believed that a K-9 sniff could not be performed while the
 vehicle was occupied, and Mills was refusing to get out of
 it. Moreover, there were no K-9 units on duty or nearby at
 the time the vehicle was pulled over. After Denver Police
 seized the vehicle, Detective Burke determined that waiting
 for a K-9 sniff would be an appropriate measure to take
 before seeking a search warrant. Although a court may well
 have issued a search warrant without the results of a dog
 sniff, we do not fault Denver Police for their thoroughness
 in arranging for and conducting the K-9 sniff before applying
 for the search warrant. We do not wish to discourage the kind
 of careful, attentive police work that ultimately serves to
 protect defendants' Fourth Amendment interests. See
 Burgard, 675 F.3d at 1034.
 
 20
 
          ¶35
 Fourth and finally, we evaluate Denver Police's diligence
 in applying for the warrant. To be sure, Detective
 Burke's mistaken belief that the police could hold the
 vehicle for a week because they had seven days to execute a
 warrant did not justify a delay. That said, he requested a
 K-9 sniff shortly after he got back to work on Monday and
 continued working on the search warrant application while he
 waited for the K-9 unit to become available. Cf.
 Mitchell, 565 F.3d at 1352-53 (holding that a delay in
 obtaining a warrant was not justified but acknowledging that
 some delay to seek assistance of another officer may be
 reasonable). The K-9 unit performed a search the next day,
 and the detective submitted a search warrant and affidavit
 that afternoon. That Detective Burke could have submitted an
 application for a search warrant on Saturday, Sunday, or
 Monday does not make his efforts any less diligent.
 Burgard, 675 F.3d at 1034 (noting that even when a
 police officer may have been able to work more quickly, an
 officer delaying to "be sure that he had all the
 information he needed from the seizing officer . . . while
 attending to his other law enforcement duties" does not
 "necessarily mean that the police conduct was
 unreasonable"). In the end, Detective Burke submitted
 the search warrant application on the same day that he
 finished gathering all material facts regarding probable
 cause that he included in the application. Cf.
 Smith, 967 F.3d at 207 (finding that this factor weighed
 substantiality in favor of the defendant where every fact set
 forth in the search warrant application that was
 
 21
 
 material to probable cause was known to the police on the
 same day the police seized the property in question).
 
 
          ¶36
 Weighing these four factors, we conclude that the three-day
 delay here did not render the seizure unreasonable. Although
 Tuesday was not the earliest possible time the
 warrant application could have submitted, it was still
 submitted within a reasonable time. Thus, the trial
 court erred in suppressing the evidence of the narcotics
 found inside the vehicle based on the delay.[5]
 
 
          IV.
 Conclusion
 
 
          ¶37
 Weighing the length of the delay, the nature and strength of
 Mills's possessory interest in the vehicle seized, the
 strength of Denver Police's justification for the delay,
 and Denver Police's diligence in applying for a search
 warrant, we conclude that the delay between the initial
 seizure of Mills's vehicle and the search warrant
 application was reasonable. Thus, the extended seizure was
 not unconstitutional. We reverse the trial court's
 suppression order and remand the case for further proceedings
 consistent with this opinion.
 
 
 ---------
 
 
 Notes:
 
 
 [1] This case was joined with two other
 pending drug distribution cases against Mills, and the trial
 court consolidated them into case number 23CR4306.
 
 
 [2] The court also ruled that the good
 faith exception to the exclusionary rule did not
 apply.
 
 
 [3] As noted above, Mills contends that
 the seizure of his vehicle violated both the Fourth Amendment
 to the U.S. Constitution and article II, section 7 of the
 Colorado Constitution. However, because "[t]he Colorado
 and U.S. Constitutions are generally coextensive with regard
 to warrantless searches and seizures," we discuss only
 the Fourth Amendment in this opinion. Eddie's Leaf
 Spring Shop & Towing LLC v. Colo. Pub. Utils.
 Comm'n, 218 P.3d 326, 333 (Colo. 2009) (citing
 People v. Rodriguez, 945 P.2d 1351, 1358-59 (Colo.
 1997)). Mills offers no reason to treat article II, section 7
 differently in this context. People v. Taylor, 41
 P.3d 681, 686 (Colo. 2002) ("The essential purpose of
 the proscriptions in the Fourth Amendment is to impose a
 standard of reasonableness upon the exercise of discretion by
 government officials including law enforcement agents, in
 order to safeguard the privacy and security of individuals
 against arbitrary invasions.") (quoting Delaware v.
 Prouse, 440 U.S. 648, 653-54 (1979))); cf. People v.
 McKnight, 2019 CO 36, ¶¶ 41-42, 446 P.3d 397,
 407-08 (reasoning that the legalization of marijuana under
 article XVIII, section 16 of the Colorado Constitution
 "expanded the protections of article II, section 7 to
 provide a reasonable expectation of privacy to engage in the
 lawful activity of possessing marijuana in
 Colorado").
 
 
 [4] We reject the People's argument
 that Mills's possessory interest in his vehicle was
 weakened because it was subject to civil forfeiture. The
 vehicle was not subject to civil forfeiture during the
 initial seizure or subsequent search.
 
 
 [5] Because we conclude the delay was
 reasonable, we need not address the good faith exception to
 the exclusionary rule.
 
 
 ---------